WILLIAM R. JOHNSON ET AL. V. A. BYLER.

1. In trespass to try title, either a legal or equitable defense, which amounts to an estoppel, may be offered in evidence without being specially plead.
2. Legal estoppels exclude evidence of the truth and equity of the particular case, to support a strict rule of law on grounds of public policy.
3. Equitable estoppels are admitted on the ground of promoting the equity and justice of the particular case, by preventing a party from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth.
4. Equitable estoppels are entitled to a fair and liberal application, like other equitable doctrines, which are admitted to suppress fraud and promote honesty and fair dealing.
5. A party is estopped whenever he has gained an undue advantage, and has caused his adversary a loss or injury.
6. One who has caused the making of an illegal contract by others cannot have the same set aside to benefit himself, to the injury of the contracting parties.
7. The courts will not disturb executed contracts, nor compel specific performance of executory contracts made for Confederate money.

APPEAL from Caldwell. Tried below before the Hon. Henry Maney.

On the twentieth day of November, 1857, the appellee sold the land in controversy to P. A. and Martha R. Swan for the sum of $2525, which was evidenced by three promissory notes for $875 each, dated November 20, 1857, and due at one, two and three years. Appellee and the Swans lived in Guadalupe county when the trade was made. Appellee made to the Swans a deed with full covenants of warranty to the land, reciting that the notes were the consideration of the sale, and stating the respective dates at which the same were to be due.

Immediately after the sale and conveyance from appellee to the Swans in 1857, they moved upon, and took possession of the land. On the fifteenth day of December, 1862, for the sum of $3750, the Swans sold and conveyed the same land to appellants, making them a fee simple deed to, and putting them in the possession of the same. This sale was made for Confederate money, and at the instance and by the direction of the appellee, for the purpose of paying off a balance due on his notes by the Swans.

February, 1866, appellee, who had removed to, and was then a resident of Fayette county, filed a suit in the District Court of Caldwell county, against the Swans, for the balance of the purchase money which he alleged to be due on their notes to him, and in his petition prayed for a foreclosure of his vendor's lien upon the tract of land. Appellants were not made parties to this suit. The venue in the case was changed, and the cause removed to the District Court of Gonzales county.

October, 1868, the cause in the Gonzales court was tried, and on a finding of the jury, that the notes were given for the land, a foreclosure was decreed, and an order of sale issued the first day of December, 1868.

January, 1869, the deputy sheriff of Caldwell county sold the land in obedience to the order of sale, at which sale appellee became the purchaser for the sum of $710,

and by virtue of and in pursuance of the sale made by order of the District Court of Gonzales county, conveyed by deed the land to appellee.

On the tenth day of March, 1869, appellee brought his action of trespass to try title against appellants in the District Court of Caldwell county.

April, 1872, a jury was waived, and the cause submitted to the court, which resulted in a judgment for appellee against the appellants for the land, and also for the sum of eight hundred and thirty-four dollars and seventy-five cents, for the excess of the rents of said land over and above the value of improvements made by appellants, and for all costs of suit. To this judgment appellants excepted, and gave notice of appeal.

*J. H. Burts, T. M. Harwood,* and *A. M. Jackson,* for appellants.

*L. J. Story,* for appellee, contended that there was no estoppel, and cited Martin v. Wellerbock, 38 Cal., 300; 18 Ohio, 41; 2 Daly's N. Y., 325; Hendricks v. Snedicker, 30 Texas, 304.

*James F. Miller,* also for appellee.

WALKER, J.—We disposed of the case of Jones v. Huff at the last term of this court, and we have nothing now to do with it except to express the hope that we may be indulged in the vanity of congratulating ourselves that both parties acquiesce in the decision, and claim something under it to help them out in the present case.

We think, however, that this case must stand or fall by its own merits.

In the fall of 1857 the appellee sold the land in controversy, on deferred payments, to P. A. and Martha R. Swan. The vendor's lien was reserved to secure the

notes, which matured in one, two and three years; and were all due in 1862, when Byler called upon Swan for payment. It does not appear precisely what amounts had been paid on these notes.

The Swans went into possession of the land, cultivated and improved, until the fifteenth day of December, 1862, when they sold the land to the appellants for $3750 in Confederate money. The facts touching this sale are of grave importance in the decision of this case. We have them set forth in the bill of exceptions, as they were not permitted to go to the jury.

This is an action of trespass to try title, in which the plaintiff—the appellee in this court—sets up a title to the land, derived as follows: In 1866 he had brought a suit in the District Court against the Swans, his vendees, asking a personal judgment and a decree foreclosing his vendor's lien.

The appellants were not parties to this suit, and, we may as well say here, are not bound by it. Yet, if the equity of redemption passed to them under their deed from the Swans, they must necessarily have been made parties, or the equity would not be foreclosed. But we will refer to this again. The venue having been changed to Gonzales county, at the Fall Term of the court, 1868, Byler obtained a judgment against the Swans, and a decree to sell under the vendor's lien.

The land was sold on the first Tuesday of January, and purchased by the appellee, for the sum of $710. The sheriff executed a deed to the purchaser, and at the March Term of the District Court of Caldwell county, for the year 1869, the appellee brought this suit against the appellants, which has resulted in a judgment in his favor, dispossessing the appellants of the land.

No further notice need be taken of the chain of title set up by either party.

39

We now propose to examine the bills of exception and the evidence which the court ruled out.

The appellants propose to prove, by the evidence of P. A. Swan and other witnesses, that in the fall of 1862, some four weeks previous to the sale from the Swans to the appellants, Byler called upon the Swans for payment of his notes; that Swan told him he had no money by him with which to pay the notes, but that he could sell the land for Confederate money, which he would do provided he (Byler) would receive *that* money in payment of the notes which he held against the land; that he would prefer not doing so, as the land would always be worth the money due against it. To this, it is claimed that Byler answered, he would receive the Confederate money in payment of his notes, and desired that the land might be sold in order that he might do so.

The Swans sold, as before stated, for the sum of $3750 Confederate money, and within four weeks from the date of Byler's visit, when P. A. Swan swears that he tendered Byler the money, and he refused to accept it. These statements constitute the evidence ruled out by the district judge.

The judge gives his reasons for ruling out this evidence in the bills of exception. They are as follows:

First—Because there was no pleading to authorize the introduction of such evidence.

Second—Because the contract attempted to be proven was an illegal contract.

Third—Because there was no consideration for the contract.

Fourth—Because it was an attempt to attack the judgment of the District Court of Gonzales county collaterally, by parol, in the case of Byler v. Swan *et al.*

As to the first of these objections the action was trespass to try title, and there was a plea of a general issue, and

under this plea we believe it is now settled doctrine, that either a legal or equitable defense, which amounts to an estoppel, may be offered without being especially plead.

In the case of Horn v. Cole, decided by the Supreme Court of New Hampshire, and reported in the May number of the American Law Register for 1873, Chief Justice Perley, speaking of legal estoppels, says: Whether by deed or record, or matter *in pais*—for certain reasons already stated—because legal estoppels shut out proof of the truth and justice of individual cases, they have been called ODIOUS, and have been construed with much strictness against parties that set them up. They were formerly required, like other defenses regarded as inequitable, to be pleaded with certainty, to a certain intent, in every particular. If they were relied on by way of averment, and tried by the jury, the jury might find, and according to some authorities were bound by their oath, *veritatim dicere*, to find according to the truth of the case, regardless of the estoppel. (Trials *per pais*, 284; Co. Lit., 227*a;* Com. Dig., Estoppel, § 5.) The practice is now different, and legal estoppels may be relied on, when given in evidence, without being specially pleaded. Legal estoppels exclude evidence of the truth and equity of the particular case, to support a strict rule of law, on grounds of public policy.

Equitable estoppels are admitted on the exactly opposite ground of promoting the equity and justice of the individual case, by preventing a party from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth.

The facts upon which equitable estoppels depend are usually proved by oral evidence, and the evidence should doubtless be carefully scrutinized, and be full and satis-

factory, before it should be admitted to estop the party from showing the truth, especially in cases affecting the title to land.

But where the facts are clearly proved, the maxim that estoppels are odious, which was used in reference to legal estoppels, because they shut out the truth and justice of the case, ought not to be applied to these equitable estoppels, as it has sometimes been, inadvertently as I think, from a supposed analogy with the legal estoppel, *by matter in pais*, to which they have in this respect no resemblance whatever. (Lord Campbell, in Howard v. Hudson, 2 E. & B., 10 ; Andrews v. Lyons, 11 Allen, 349, 351.)

In other cases, where more attention has been paid to the real nature of this equitable doctrine, it has been held that such estoppels are not odious, and to be construed strictly, but are entitled to a fair and liberal application, like other equitable doctrines which are admitted to suppress fraud and promote honesty and fair dealing. (Miller & Crompton, Justices, in Ashpital v. Bryan, 3 B. & S., 472; Cowen, J., in Dezell v. Odell, 3 Hill, 220; Commonwealth v. Moltz, 10 Barr, 530, 531 ; Buckingham v. Hanna, 2 Ohio St., 557 ; Van Rensselaer v. Kearney, 11 How., 326 ; Preston v. Mann, 25 Conn., 118, 128.)

The doctrine of equitable estoppels, while it is more frequently asserted than in former practice, is becoming to be better understood and more easily defined by the profession.

A party is estopped by his acts whenever he has gained an undue advantage, or has caused his adversary a loss or injury.

We must examine how far this rule should be applied to the case at bar. But we will first notice the second, third and fourth reasons upon which the appellants' evidence was ruled out. The second and third have no application to the principle involved. The evidence might

fall far short of proving a contract, and yet prove very conclusively a state of facts upon which the appellee would be estopped from setting up any claim to the land through his vendor's lien. It does not appear to have been the object of the appellants' counsel to prove a contract between Byler and the Swans, whereby the latter were authorized to sell the land for Confederate money. It may have been quite sufficient for them to prove that by his acts and declarations he had induced the Swans to make the sale under circumstances which would forever estop him from denying its validity.

As to the fourth reason given, that the judgment of the District Court of Gonzales county could not be impeached collaterally by the appellants, it is a sufficient answer that they were not parties to this judgment, and may have known nothing whatever of the proceedings under which it was obtained, although one of them appeared on the day of sale, and gave notice of an adverse claim.

Having thus stated the facts, and to some extent intimated their bearing upon the decision of this case, let us look to the principles of law which they invoke. We have not held that Confederate money can form a good and valid consideration for a contract; nor that one who purchases for Confederate money, without notice, can protect himself as a *bona fide* purchaser, without notice, for a valuable consideration.

But we have held that we will not disturb executed contracts, nor compel specific performance of executory contracts made for Confederate money.

Without, then, trenching upon any of the principles heretofore decided by this court, how does the case at bar stand?

Taking the excluded evidence as true, Byler has been the prime cause of an illegal contract being made between the appellants and their vendors. Can he have this con-

tract set aside? We think not. The court would not dis-
turb the contract as between the appellants and the
Swans, it being fully executed.   Shall we then disturb it
at the instance of Byler, who was really the cause of its
being made? We would rather treat the sale from Swan
to the appellants as binding·upon all parties in any way
connected with it.

We do not hold Byler bound by it, as one would ordi-
narily be held bound by a contract for the sale of land,
for there is no such contract proven or offered to be pro-
ven as would bind him upon the principle governing con-
tracts for the sale of land; but we treat him as one
estopped by his acts from taking advantage either of the
appellants or the Swans, in a matter which he has led
them into, if the facts exist as offered to be proved by the
appellants.   This evidence should be heard, and if it be
true the appellee is in equity forever barred from setting
up his title to this land.

For these reasons the judgment of the District Court is
reversed and the cause remanded.

REVERSED AND REMANDED.