In Johnson's Case, 42 Tex. Cr. R. 377, 60 S. W. 48, Judge Henderson, delivering the opinion of this court, used the following language:

"We believe, under our statutes, in every case where it becomes a question whether or not there was an intention to kill on the part of the slayer suggested by the character of weapon used not being deadly, that it is the duty of the court to submit the issue of manslaughter; and, furthermore, if there was no intention to kill, he should submit the issue of aggravated assault. See Fitch v. State, 37 Tex. Cr. R. 500 [36 S. W. 584]; Taylor v. State [51] Tex. Cr. App. [148] 51 S. W. 1106; Dones v. State, 8 Tex. Cr. App. 112; Whitaker v. State, 12 Tex. Cr. App. 436."

This does not seem to have been necessary in deciding the case. A similar construction of the statute is given in Taylor v. State, 41 Tex. Cr. R. 148, 51 S. W. 1106; Lee v. State, 44 Tex. Cr. R. 460, 72 S. W. 195; Betts v. State, 60 Tex. Cr. R. 635, 133 S. W. 251.

[11] We believe that in so far as these decisions that lay down the proposition that the statutes quoted above require the submission of manslaughter without proof of adequate cause where the instrument used is not per se a deadly weapon, that they misconceive the purpose and effect of the statute. This is the view of Mr. Branch as stated in his Ann. P. C. p. 1183. This is in accord with the opinion of this court written by Judge Hurt in the Hill Case, 11 Tex. App. 470. Relying upon this interpretation in the published opinions of this court in Johnson v. State, supra, and the other cases mentioned in that connection, appellant's counsel regarded the evidence such as to require the trial court to submit the charge of manslaughter and excepted to its failure to do so. The exception was general, however; its terms being, in substance, such as were held insufficient in the cases cited in Branch's Ann. P. C. p. 1131, § 2004. The trial court, guided by the opinion of this court in Hill v. State, supra, and its own interpretation of the statute, held, we think correctly, that the issue of manslaughter was not raised.

The manner in which the blow was struck with the ax handle, in connection with the circumstances, and the effect of the blow in crushing the bones of the skull of deceased, was such that we would not be justified in holding the evidence insufficient to sustain the finding of intent to kill.

I therefore believe that the motion for rehearing should be overruled.

PRENDERGAST, J. I concur in overruling the motion. In the original opinion by mistake I stated it was appellant who called on deceased at his home the day before he killed him. It was not appellant, but his father. This mistake was in no way material against appellant.

---

SOUTH TEXAS LUMBER CO. v. WOLVIN LINE. (No. 756.)

(Court of Civil Appeals of Texas. El Paso. Dec. 6, 1917. Rehearing Denied Jan. 3, 1918.)

1. ESTOPPEL ⬳112 — PLEADING — SUFFICIENCY.

It is sufficient to plead the facts relied on to show estoppel.

2. CONTRACTS ⬳309(1)—PERFORMANCE—EXCUSES—IMPOSSIBILITY.

Generally, where performance becomes impossible subsequent to execution of contract, the promisor is not discharged, unless performance is prevented by a law subsequently passed.

3. CARRIERS ⬳83—LOSS OF GOODS—LIABILITY.

Where shipping company, knowing Mexican law required delivery to custom house, induced plaintiff to ship lumber with bill of lading with draft attached, agreeing to surrender lumber only on surrender of bill of lading, and delivered lumber to custom house, which delivered it without bill of lading, the company was liable for the loss.

Error from Harris County Court; Clark C. Wren, Judge.

Action by the South Texas Lumber Com-

pany against the Wolvin Line. Judgment for defendant, and plaintiff brings error. Reversed and rendered.

W. O. Huggins, of Houston, for plaintiff in error. Baker, Botts, Parker & Garwood, of Houston, for defendant in error.

HARPER, C. J. The South Texas Lumber Company brought this suit against the Wolvin Line for $103.41 under the following allegations: That plaintiff delivered to defendant certain lumber for transportation to Tampico, Mex., which lumber it had contracted to sell to a named lumber company at said place for the sum of $7,312.02, for which draft with bill of lading attached was drawn upon the latter company; that by the terms of the contract between plaintiff and defendant for transportation defendant bound itself to keep the lumber in its possession until ordered by plaintiff to deliver upon surrender of the bill of lading to it, but that the lumber was delivered without authority of plaintiff to the consignee or some other person without authority; that the lumber company at Tampico sent to plaintiff a part of the purchase price, leaving unpaid $103.41, for which it sued.

Defendant answered by general denial, and, specially, that the bill of lading was delivered to plaintiff; that the lumber was transported to Tampico and upon arrival was delivered to the customs house as was required under the laws of Mexico, and that when defendant so delivered the lumber it had no further control over it, but it was in the exclusive control of the customs house authorities of Mexico; that the shipment moved under bill of lading, subject to the provisions thereof, said bill of lading made a part of its pleadings.

To this answer plaintiff replied by supplemental plea that if it was true that the laws of Mexico required delivery to the customs house authorities, that defendant knew this fact at the time it entered into the contract; that plaintiff had no such knowledge; therefore it was estopped from setting up such lack of power to perform its contract.

The court rendered judgment in favor of defendant, from which the cause is brought here by writ of error.

Appellant urges that the facts as found by the court show that defendant at the time it entered into the contract knew that delivery could not be made in accordance with the contract; that plaintiff did not know it, but relied upon the contract, and in consequence suffered the damages sued for; therefore the court erred in its judgment.

"Findings of Fact.

"First. That on the 10th day of April, 1913, Cia. Consolidado De Maderas, a lumber company at Tampico, Mex., hereinafter for convenience called the 'Mexican Company,' purchased from plaintiff certain lumber to be shipped to Tampico, and upon payment by the Mexican Company of the total agreed charge therefor, to wit, $7,312.02, it would be entitled to the ownership and possession of the lumber.

"Second. That plaintiff advised with James Beattie, the manager of the defendant, as to the method that should be adopted in order to assure to plaintiff payment in full for the lumber and all carrying charges, before the delivery of the lumber to the Mexican Company, and was by said manager advised to ship the lumber to its own order at Tampico, indorsing the bill of lading in blank, or to the Mexican Company, and attaching same to a draft on the Mexican Company for the sum above named. The mails at the time being interrupted, it was agreed that the master of the vessel of the defendant carry the lumber to Tampico, and there deliver it to a bank, for collection of the draft and the delivery of the bill of lading to the Mexican Company. The draft with the bill of lading attached, forwarded by plaintiff, was placed in an envelope addressed to the Tampico Banking Company and sealed by plaintiff before same. was delivered to the master of the vessel of the defendant.

"Third. The lumber was then delivered by the plaintiff to the defendant, and defendant issued to plaintiff a bill of lading therefor, the original of which (by the agreement of the parties) is hereto attached, marked Exhibit A and made a part hereof.

"Fourth. That said bill of lading was executed in behalf of defendant by the said Beattie.

"Fifth. The defendant then drew a draft for said sum on the Mexican Company, indorsed the bill of lading to the Mexican Company, and attached it to the draft and delivered the same to the master of the steamship Hero who, for the defendant, carried the lumber to Tampico, and also carried the draft and bill of lading, delivering the letter to the bank at Tampico. The draft with the bill of lading attached forwarded by plaintiff was placed in an envelope addressed to the Tampico Banking Company and sealed by plaintiff before same was delivered to the master of the vessel of the defendant.

"Sixth. The defendant did not deliver the lumber to plaintiff or its order at Tampico, but delivered same to the customs officials at that port.

"Seventh. The Mexican Company refused to pay the draft to which the bill of lading was attached, and the draft and bill of lading were returned to plaintiff by the Tampico Banking Company.

"Eighth. The customs officials at Tampico, without surrender of the bill of lading, delivered the lumber to the Mexican Company.

"Ninth. Afterward the Mexican Company remitted to plaintiff the sum of $7,208.51, leaving unpaid the difference between the draft drawn by plaintiff on the Mexican Company, to wit, $7,312.02, and the said amount remitted, the said balance amounting to $103.41, and this balance the Mexican Company refused to pay.

"Tenth. By the laws in force at the port of Tampico at the time of the delivery of said lumber and for some time prior thereto, the defendant was not permitted to deliver the lumber to plaintiff, or its order, but was required to deliver same to the customs officials at that port, and in doing so lost. possession and control of said lumber.

"Eleventh. The defendant and said Beattie knew at and before the execution and delivery of the bill of lading to plaintiff that the defendant would not be permitted to deliver the lumber to plaintiff or its order at the port of Tampico, but would be required to deliver same to the customs officials at Tampico upon arrival of the ship at that port.

"Twelfth. The plaintiff and its officers and agents conducting the matter for plaintiff had no knowledge of any law or custom at the port

of Tampico which would prevent defendant from delivering the lumber to it or its order at that port.

"Thirteenth. Plaintiff had on prior occasions sold lumber which was shipped to Tampico, Mex., but on all such occasions deliveries were made by plaintiff in the United States, the purchaser undertaking the movement by water.

"Fourteenth. The greater portion of the lumber was dutiable goods under the Mexican law.

"Fifteenth. The ordinary course of handling shipments at Tampico was that the custom house authorities would not deliver goods held by them until the bills of lading, properly indorsed by the agent of the defendant company, were surrendered, but in this instance the customs officials did not observe this course.

"Sixteenth. The defendant did not inform plaintiff at any time of said laws and customs in force at said port of Tampico.

"Seventeenth. Plaintiff was unwilling to rely on the credit of the Mexican Company for payment, and was unwilling to ship the lumber except upon such an arrangement as would assure payment to it in full before the delivery of the lumber to the Mexican Company.

"Eighteenth. If the terms of the bill of lading had been performed by the defendant as written in the bill of lading, it would not have surrendered possession of the lumber at the port of Tampico except upon surrender of the bill of lading to it. This finding is based solely upon the written terms of the bill of lading.

"Nineteenth. Plaintiff would not have delivered the lumber to the defendant for shipment had it known that the defendant would be unable to retain possession of the lumber until the bill of lading had been surrendered to the defendant.

"Twentieth. At the time the lumber was delivered by plaintiff to the defendant for shipment, defendant and said Beattie knew that plaintiff was unwilling that the Mexican Company get possession of the lumber until it had paid in full therefor, and had adopted the methods pursued in order to assure same.

"Twenty-First. At the time the shipment moved there were numerous revolutions in Mexico.

"Twenty-Second. The said balance of $103.41 has never been paid."

The proposition is that since appellee entered into the contract with full knowledge upon its part that the laws of Mexico prohibited the delivery of the lumber direct to the consignees and the collection of the purchase price before delivery, and these facts not being known to appellant, appellee is estopped to deny that it could perform the contract.

[1] Preliminary to a discussion of the merits of the case under the contract as pleaded and found by the trial court, appellee urges that the question of estoppel is not in this case, because there is no pleading to support it. A sufficient answer is that appellant has pleaded the facts and that is all that is required. Johnson v. Byler, 38 Tex. 606.

The question first presented by proposition is, Did the act of the customs authorities in taking possession of the lumber and subsequently delivering it to consignees, thus preventing appellee from literally carrying out its contract to deliver, relieve it from performance of this provision of the contract?

[2] The general rule is that where the performance becomes impossible subsequent to making of the contract the promisor is not discharged. An exception to this rule is where the performance of the contract is prevented by a law subsequently passed. 9 Cyc. 627, 628.

[3] But the facts of this case are that the practice of the customs officers at Tampico in taking charge of dutiable goods and thereafter delivering to consignee was in practice at the time this contract of shipment was entered into, and appellee knew that such was the law and practice at the time. Therefore, by its representations and by taking the goods for shipment under the provisions of the contract, it thereby induced the appellant to enter into a contract it otherwise would not have entered into. Appellee took the risk and should be held to it to the extent of payment of damages which arose as a consequence of its breach. Jennings v. Lyons, 39 Wis. 553, 20 Am. Rep. 57; Northern P. Ry. Co. v. Am. Trad. Co., 195 U. S. 439, 25 Sup. Ct. 84, 49 L. Ed. 269. And having failed to make the delivery as it contracted to do, the fact that the customs officers took charge of the lumber did not relieve it of liability under the contract.

Appellee contends that the holding in Herbst v. The Asiatic Prince (D. C.) 97 Fed. 343, affirmed 108 Fed. 287, 47 C. C. A. 325:

"Where, by the local law and usage, dutiable goods imported are required to be delivered to the customs authorities, who assume the responsibility of thereafter making delivery to the proper person on payment of the duty, a delivery by the ship to such authorities is a good delivery as between carrier and shipper"

—is conclusive of appellant's right to a recovery. In the cases cited, the only question involved was that of delivery in accordance with the contract, and the court holds that there was a substantial compliance with the contract in the delivery which occurred through the customs authorities.

In this case, we have more than a question of delivery. The goods were delivered to appellee as shown by the pleadings and findings of the trial court, to be transported and delivered, and not to be delivered without payment of the contract price of the lumber shipped.

By the representations made by appellee's manager as above indicated, it induced the contract of shipment, which, according to the findings of the trial court would not, otherwise, or but for the representations in the form of inducements to enter into the contract, have been made. So if appellee has contracted to do that which the laws and customs already existing prohibited, and with full knowledge thereof, and failed to perform it, in all good conscience and in equity, he must now be estopped from taking advantage of any conditions of which it had such knowledge as a defense to actual damages suffered by the appellant.

There being no controversy as to the facts, the cause is reversed and rendered for appellant.

WALTHALL, J., did not sit, being absent on committee of judges assisting the Supreme Court.

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes