SHALLER et al. v. ALLEN et al.   (No. 2557.)

(Court of Civil Appeals of Texas.   Amarillo.
Dec. 2, 1925.)

1. Pleading  ⟷228—Plaintiffs' exceptions to paragraphs of defendants' answer as failing to state cause of action treated as general demurrers.

"Special exceptions" assailing sufficiency of defendants' answer to state a cause of action are in effect general demurrers, and will be so considered.

2. Mines and minerals  ⟷48—Oil and gas in place part of "realty."

Oil and gas in place constitute a part of "realty."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Real Property.]

3. Frauds, statute of  ⟷58(1)—Mineral lease for five years, and so long thereafter as oil or gas found, conveyance of interest in realty and required to be in writing.

Mineral lease for five years, and so long thereafter as oil or gas are found on land in paying quantities, is conveyance of interest in realty, required by statute of frauds to be in writing.

4. Frauds, statute of  ⟷63(2)—Oral agreement to surrender of lease invalid under statute.

Oral agreement to surrender written lease for term of years to lessors is invalid under statute, and no defense to action for rentals.

5. Frauds, statute of  ⟷63(2)—Oral agreement for surrender of leased premises relieved from operation of statute by equities as would make an oral sale valid and enforceable.

An oral agreement to surrender leased premises held under written contract is relieved from operation of statute of frauds by such equities as would make an oral sale of land valid and enforceable.

6. Estoppel  ⟷112—Plea of oral agreement for release of lease as plea of estoppel subject to special exceptions, where no allegation of defendants' reliance thereon.

In action by lessors for rentals under oil and gas lease, defendants' answer alleging oral agreement for release of lease was subject to special exception, where defendants did not plead that delay in executing release was because of reliance thereon, but such plea was sufficient as against general demurrer.

7. Mines and minerals  ⟷79(7)—Lessee's answer, stating facts sufficient to show an oral agreement to extend time for execution of written release and ratification thereof not subject to general exceptions.

In action by lessors against lessees for rentals under a mineral lease, defendants' answer held to state sufficient facts to show oral agreement for surrender of such lease, and to extend time for execution of written release, and suf-

ficiently pleaded ratification thereof as against general exceptions.

8. Mines and minerals  ⟷79(7)—Amount expended by defendants in sinking well as required by lease no defense to action for rentals.

In an action by lessors against lessees for rentals under a mineral lease, plaintiffs' special exception directed at paragraph of appellees' answer alleging expenditure of large sums of money in drilling test well, should have been sustained, where contract admittedly required sinking of such well, and amount expended in performing contract could afford no excuse for nonpayment of rentals.

9. Witnesses  ⟷176(2)—Statute prohibiting testimony of deceased's statements not applicable after testimony of deceased given and preserved, and is at service of either party.

Vernon's Sayles' Ann. Civ. St. 1914, art. 3690 (Rev. St. 1925, art. 3716), prohibiting testimony as to statements of deceased party, is not applicable after testimony of deceased has been given and preserved, and is at service of either party, and the fact that, in a suit by lessors against lessees, such testimony of defendant relative to statements of and transactions with a deceased party plaintiff is offered before testimony of deceased by deposition was introduced, did not change the rule.

10. Witnesses  ⟷269(1)—Defendants placed on stand by plaintiffs for limited purpose only may be permitted, on cross-examination, to testify to their defense.

In an action by lessors against lessees for rentals under a mineral lease, where plaintiffs placed defendants on stand as witnesses for a limited purpose only, it was not error for the court to permit defendants on cross-examination to testify as to their defense; it not being the rule in this state to confine cross-examination of witnesses to facts brought out under direct examination.

11. Witnesses  ⟷240(2)—Permission of leading and suggestive questions on independent matters on cross-examination largely discretionary with court.

It is largely discretionary with court to permit leading and suggestive questions on independent matters on cross-examination of witness.

12. Evidence  ⟷155(8)—All correspondence admissible where part received.

In an action by lessors against lessees for rentals under mineral lease, all correspondence relative to giving written release and surrender of lease were admissible, where part was admitted.

13. Trial  ⟷352(5)—Permitting jury to have issue, assuming controverted facts and based on weight of evidence during deliberation, error.

In an action by lessors against lessees on a lease, where defendants pleaded the abandonment and surrender of lands to agent of plaintiffs, a special issue submitting question whether such agent, by his acts, statements, or conduct with defendants, caused them to believe he

had accepted their abandonment and surrender of the lands held under the lease, *held* erroneous as assuming controverted facts and as clearly on weight of evidence.

Appeal from District Court, Hemphill County; W. R. Ewing, Judge.

Suit by C. H. Shaller and others against R. L. Allen and others, wherein J. C. Buchanan was impleaded by cross-action and by supplemental petition made party defendant. Upon the death of C. H. Shaller, C. C. Shaller was substituted as party plaintiff in his stead. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

J. W. Sanders, of Canadian, for appellants.

Frank Willis and Hoover, Hoover & Willis, all of Canadian, J. W. Crudgington, of Amarillo, and Smith & Smith, of Fort Worth, for appellees.

JACKSON, J. This suit was instituted in the district court of Hemphill county, Tex., by C. H. Shaller and wife, Ada Shaller, C. C. Shaller and wife, Bertha Shaller, and A. J. Shaller, plaintiffs, against R. L. Allen, S. J. Slade, and B. W. Owens, defendants. B. W. Owens, by cross-action, impleaded J. C. Buchanan, and by supplemental petition he was made defendant by plaintiffs.

While the case was pending, C. H. Shaller died, and his executor, C. C. Shaller, was substituted as party plaintiff in his stead. One of the defendants, S. J. Slade, also died, and his executrix, Mrs. Nannie I. Slade, was made party defendant.

Plaintiffs alleged: That on March 10, 1919, as owners and lessors, they executed an oil and gas lease contract, by the terms of which they granted, demised, and let certain lands in Hemphill county, Tex., all of which was properly described in the petition, and that the acreage involved in this suit was held by the defendants as lessees under the terms of said lease contract or as assignees by virtue of valid assignments made under and subject to the terms and conditions thereof. That the lease ran for a period of 5 years from its date, and so long thereafter as oil or gas was found in paying quantities. That it required that a derrick be erected on the lands in 6 months. That the digging of a well be begun in 10 months, and with due diligence continued to a depth of 3,000 feet, unless oil or gas was found in paying quantities at a lesser depth. That after the end of the second year of the 5-year period the lessees or their assigns should pay to lessors the sum of 50 cents per acre per annum, payable semiannually in advance at the First National Bank of Canadian, and stipulating that the lessors or their assigns had the right to surrender the lease at the end of the second year or at the end of any other year thereafter within the 5-year period by the execution and delivery to the lessors of a release of said lands, which release was to be placed of record at the expense of lessees, and a copy furnished to lessors. If oil was discovered and marketed in paying quantities, the payment of such rentals was to cease. That the lessees and their assigns drilled a well on the leased land according to the terms of the contract to a depth of 3,000 feet, but no oil, gas, or other mineral was produced, and no release to the acreage held by the defendants had ever been executed or delivered or placed of record in Hemphill county, and no copy of such release had ever been furnished to plaintiffs. That by the terms of said lease the defendants were obligated to pay plaintiffs on the acreage still held by them 50 cents per acre per annum, and 2 years' rental under said lease contract was long past due, and is the sum of $10,168.75, for which they sue, together with their interest and costs.

The defendants answered separately by general demurrer, special exceptions, and general denial, and all pleaded: That the lease was dated March 10, 1919. That in pursuance of their obligations thereunder they had expended large sums of money in drilling the test well to the depth of 3,000 feet, and, having failed to find oil or gas, abandoned the well about August 1, 1920. That about October 1, 1920, they notified plaintiffs, through their duly authorized agent, C. H. Shaller, that they had decided to finally abandon the lease, and had surrendered it back to the lessors. That the lease expressly provided that the lessees had the option to surrender it at the end of the second year after its date by the execution and delivery to the lessors of a release which was to be placed of record. That at the time defendants notified said agent, C. H. Shaller, of their intention to surrender the lease, he was also notified that they were ready and willing to execute, at any time he desired, a release of all right, title, and interest held by the defendants in said land, and C. H. Shaller, the agent of plaintiffs, agreed that he would notify defendants when he desired such release, and defendants agreed to furnish it, and such agreement constituted a new agreement between the parties as to such release, and in any event constituted a waiver of the terms of the original lease as to the furnishing of said release.

Defendants further alleged that, as the agent for the other plaintiffs, C. H. Shaller expressly waived the provisions of said original lease as to the means of furnishing a release of the mineral rights in said land, and agreed, after having been notified that the defendants had abandoned said lease and surrendered it back to the lessors, that he would notify them when such release was desired, and they agreed to execute such release at any time upon receipt of notice.

The defendants also allege that after October 1, 1920, the plaintiffs knew they had abandoned and had surrendered all their rights in the lease, and during the year 1921 attempted to release said lands for oil and gas development to various parties, thereby ratifying the oral agreement made between the defendants and plaintiffs as to the manner of furnishing a release to said lands. The defendants further aver that, upon notice from plaintiffs, about January 1, 1923, they executed and placed of record in the deed records of Hemphill county a release to all of the lands held by them, for which reasons they are not, and have never been, liable to plaintiffs in any sum of the rentals sued for.

Plaintiffs, by supplemental petition, replied to the answer of defendants, by general demurrer and what they termed "special exceptions," to the effect that defendants' allegations that they had, by an oral agreement with plaintiffs, surrendered the lease and a release should be requested and furnished when desired, and this constituted a new agreement, and a waiver of the provision of the original lease for a release in writing, and the averments as to the ratification, were conclusions of the pleader not based on properly stated facts, and were vague, uncertain, and indefinite. They also specially excepted to the paragraph of appellees' answer alleging that they had expended large sums of money, because such allegation was immaterial and prejudicial. Their reply also contained a general denial.

At the conclusion of the testimony, in response to special issues submitted by the court in his main charge, the jury found that the defendants, in the fall of 1920, notified C. H. Shaller that they were surrendering their lease on the lands, and that they would execute a release when called upon to do so; that C. H. Shaller agreed that a release of the mineral lease of March 10, 1919, might be executed by them at such time as he requested it.

On these findings of the jury the court rendered judgment against the plaintiffs, hereinafter called appellants, and in favor of defendants, hereinafter called appellees, from which judgment appellants have appealed.

Appellants, by separate assignments, which we will consider together, assail as error the action of the trial court in overruling their general demurrer, and what they designate "special exceptions" and their requested instruction for a directed verdict, because the statute of frauds requires that the lease contract sued on be in writing, and therefore it could not be released, modified, or superseded by the subsequent oral agreement pleaded and relied on by appellees, which, as a matter of law, was not sufficient to constitute a valid defense by contract, waiver, estoppel, or ratification.

The provision of the lease contract over which this controversy arises reads:

"It is understood and agreed by and between the parties hereto that the period of this lease shall be 5 years, and as long thereafter as oil or gas or coal is found in paying quantities, provided that, after the expiration of the second year, the lessees shall pay to the lessor the sum of 50 cents per acre per year as a rental, payable semiannually in advance, by depositing same in the First National Bank of Canadian, Tex., which bank shall remain the depository regardless of changes in ownership of the lands or lease. But the lessees shall have the option to surrender the said lease at the end of the second year, or at the end of any other year thereafter within the 5-year period, by the execution and delivery to the lessor of a release, and the same is to be placed upon the records of the county clerk's office for the county aforesaid at the expense of the lessees, and a copy of the same is to be furnished to the lessor."

There is no provision in the lease contract that the lessors may forfeit the lease for failure of the lessees or their assigns to pay the rental as the contract provides; but it is expressly stipulated that "there shall be no implied covenants read into this lease," and the intention of the contract doubtless was to restrict the right of lessors to a collection of the rental.

[1] Appellants' exceptions assailing the sufficiency of the paragraphs of appellees' answer to state a cause of action were, in effect, general demurrers to such paragraphs, and will be so considered. Vickrey v. Dockray et al. (Tex. Civ. App.) 158 S. W. 1160.

[2] Oil and gas in place constitute a part of the realty. Stephens County et al. v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566, Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779, and authorities cited.

[3] The lease contract, covering, as it did, a period of 5 years, and so long thereafter as oil or gas was found on the land in paying quantities, was a conveyance of an interest in realty, and was required by the statute of frauds to be in writing. Green v. Priddy, 112 Tex. 567, 250 S. W. 656; Texas Co. v. Tankersley (Tex. Civ. App.) 229 S. W. 672; Pantaze v. McDill et al. (Tex. Civ. App.) 228 S. W. 962.

[4] Appellees' allegations that they had, by a new oral agreement, surrendered the lease back to appellants, were subject to exception challenging its legal sufficiency, for a mere oral agreement would be within the statute of frauds, and not enforceable. Gardner et al. v. Sittig (Tex. Com. App.) 222 S. W. 1090; Burgher & Co. v. Canter et al. (Tex. Civ. App.) 190 S. W. 1147; Beard v. A. A. Gooch & Son, 62 Tex. Civ. App. 69, 130 S. W. 1022.

[5] We are not to be understood as holding that a written lease to continue for a period of more than one year cannot be rescinded

or abrogated by an oral agreement. If there is a consideration for such agreement, possession by the lessor and the presence of such facts as would make the transaction fraudulent, if not enforced, an oral agreement to surrender leased premises held under a written contract is relieved from the operation of the statute of frauds by equities such as would make an oral sale of land valid and enforceable. Ward et al. v. Etier, 113 Tex. 83, 251 S. W. 1028; Wafford et al. v. Branch (Tex. Com. App.) 267 S. W. 260; McDonald et al. v. Whaley (Tex. Com. App.) 244 S. W. 596; Hunt et al. v. Evans (Tex. Civ. App.) 233 S. W. 854.

[6] Appellees did not plead that, relying on the oral agreement made with, or the conduct or acts of, C. H. Shaller, the agent of appellants, they were induced to wait until requested to execute a written release to the land they held under the lease contract, but left this to be inferred from the general statements in the answer. Therefore, as a plea of estoppel, it was subject to special exception. Hemphill County Home Protective Association et al. v. Richardson (Tex. Civ. App.) 264 S. W. 294, and authorities cited. However, as against a general demurrer, we deem it sufficient. South Texas Lumber Co. v. Wolvin Line (Tex. Civ. App.) 199 S. W. 1129; Johnson v. Byler, 38 Tex. 606.

[7] Appellees' answer stated sufficient facts to show an oral agreement to extend the time for the execution of a written instrument releasing all rights held by them in the land under and by virtue of the original lease contract (Bullis et al. v. Presidio Min. Co. et al., 75 Tex. 540, 12 S. W. 397; Adams et al. v. Hughes [Tex. Civ. App.] 140 S. W. 1163; Kistler v. Latham [Tex. Com. App.] 255 S. W. 983), sufficiently pleaded ratification (West Side Oil Co. v. McDorman [Tex. Civ. App.] 244 S. W. 167), and, construed together, was not subject to the general exceptions challenging its sufficiency to state a defense, and the court did not err in so holding.

[8] Appellants' special exception, directed at the paragraph of appellees' answer setting up that they had expended large sums of money, to wit, $56,000, in drilling the test well provided for in the original lease contract, should have been sustained, because appellants admitted in their pleading that the provisions of the contract requiring the beginning and completion of a well to the depth of 3,000 feet had been complied with by appellees, and the amount they expended in performing this division of the contract could afford them no relief from the payment of the rentals as contracted.

We shall refrain from a discussion of the testimony, in view of the disposition of the case, and content ourselves with stating that it was sufficient to raise issues of fact for the determination of a jury, and appellants were not entitled to a directed verdict.

Appellants' fourth and fifth assignments, which we will consider together, urge as error the action of the trial court in permitting some of the defendants to testify to the oral agreement which they claimed to have had with C. H. Shaller, the agent of appellants: First, because C. H. Shaller was dead at the time of the trial, and the testimony of the defendants was of statements made by, and transactions had with, the deceased, and therefore inadmissible; second, because the court permitted appellees, on cross-examination, to develop from the defendants all the facts and circumstances relative to such transactions by leading interrogatories after appellants had placed the defendants on the stand for the expressed and limited purpose of showing only that no written release had been furnished before the suit was filed.

[9] The record discloses that C. H. Shaller was originally a party plaintiff to the suit, and on his death C. C. Shaller, his executor, was made a party plaintiff with the other appellants, to prosecute the case. The testimony of C. H. Shaller before his death was given by deposition, and was on file in court as a part of the record in the cause. The purpose of article 3690 of V. S. C. S. 3716, R. C. S. 1925, undoubtedly is to prevent ex parte or false versions or interpretations of statements by, and transactions with, the deceased, whose testimony is unavailable by reason of the death of such deceased, but the rule should not be applied after the testimony of the deceased has been given and preserved, and is at the service of either party; otherwise the statute, instead of being a safeguard to truth, that justice may prevail, could become a rule by which the truth could be suppressed. The fact that the testimony of the defendants relative to the statements of, and the transactions with, the deceased was offered before the testimony of the deceased, by deposition, was introduced, would not, in our opinion, change the rule. Marshall et al. v. Campbell (Tex. Civ. App.) 212 S. W. 723; O'Neill v. Brown, 61 Tex. 34; Runnels v. Belden, 51 Tex. 48.

[10, 11] It was not error for the court to permit the appellees, on cross-examination, to testify to their defense after they had been placed upon the stand as witnesses for a limited purpose only, by appellants. Confining the cross-examination of the witness to the facts brought out on direct examination is not the rule in this state. Rhine v. Blake & Jenkins, 59 Tex. 240; Roberts v. Miller (Tex. Civ. App.) 30 S. W. 381. The court probably permitted leading and suggestive questions on independent matters beyond the degree permissible, but this was a matter largely in his discretion. These assignments are overruled.

The sixth and seventh assignments of appellants have been considered, and are disposed of by the foregoing discussion.

The eighth assignment presents for review the action of the trial court in admitting certain letters written by appellees to appellants relative to giving a written release and the surrender of the lands held by them; and the ninth assignment attacks, as error, the action of the court in excluding a letter written by appellants' attorney in reply thereto.

[12] A letter which merely narrates a past transaction is generally inadmissible in behalf of the writer, because in effect self-serving, but it may be competent to show intention, notice, demand, and good faith (Encyclopedia of Evidence, vol. 14, p. 715), and the letters offered by appellees were admissible under this rule; but all letters constituting the correspondence of the parties regarding the matter in question are admissible (Encyclopedia of Evidence, vol. 14, p. 718; 22 C. J. par. 1108, p. 905).

If a "part of a conversation, declaration, document, or series of documents, books of accounts, letters, or correspondence, or transaction is shown in evidence by one party, the other party may, for the purposes of explanation, show the remainder or so much thereof as is necessary to a complete understanding of the part already shown, even though the result is to let in self-serving declarations." 22 C. J. par. 163, p. 196.

The court should have permitted in evidence the letter offered by appellants.

[13] The court, at the request of appellees, and over the objection of appellants, submitted to the jury a special issue, reading:

"Did C. H. Shaller, by his acts, statements, and conduct with and to the defendants, Owen, Slade, Allen, and Buchanan, cause them to believe that he had accepted their abandonment and surrender of the lands held by them under the mineral lease of March 10, 1919?"

Appellants challenge as error the action of the court in submitting this issue to the jury, because not authorized by the pleadings nor the testimony, and for the reason that it was upon the weight of the evidence and assumed controverted facts. The making of the oral agreement relied upon, the ratification thereof, and the abandonment and surrender of the lease contract, were sharply controverted issues.

The issue as submitted assumes that C. H. Shaller made statements and committed acts and conduct which he denied, and also assumes that appellees had abandoned and surrendered the lands held by them under the lease contract, which appellants controverted, and was clearly upon the weight of the evidence. Hines, Director General, et al. v. Thornton (Tex. Civ. App.) 251 S. W. 523. In explanation, the court says that this special charge was submitted to the jury and returned unanswered at the time it came in

with the verdict, and counsel for appellees moved the court to receive the verdict without answering this issue, for the reason that the issues presented in the court's main charge were answered in the affirmative, and said special issue was therefore immaterial; that the court sustained the motion, and no exception was taken to the court's action by appellants.

Appellants, before this issue was submitted to the jury, properly objected and excepted thereto for the reasons stated above, and their exceptions were overruled by the court, and of this appellants complain. It was not the withdrawal of the charge from the jury that constituted the error against appellants, but it was permitting the jury to have the charge during its deliberation.

Appellants' other assignments not directly disposed of in the foregoing discussion present matters that were within the discretion of the trial court, and are overruled.

For the errors discussed, the judgment is reversed, and the cause remanded.