**TRANS WORLD AIRLINES, INC.,**
Appellant,

v.

**SKYLINE AIR PARTS, INC.,** Appellee.

No. 3256.

District of Columbia Court of Appeals.

Argued July 1, 1963.

Decided July 31, 1963.

Peter R. Cella, Jr., Washington, D. C., for appellant.

John J. Schlick, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

Appellee Skyline Air Parts, Inc., sued appellant Trans World Airlines, Inc., for breach of its contract to deliver certain airline equipment. Each party filed a motion for summary judgment, resulting in the grant of appellee's motion and in denial of appellant's motion. From this judgment, Trans World appealed.

Summary judgment cannot be granted if there is a genuine issue of a material fact. Aderholdt v. Lewis, D.C. App., 187 A.2d 488, 489; Blyther v. Pentagon Federal Credit Union, D.C.Mun.App., 182 A.2d 892; Corson & Gruman Co. v. Zuber, D.C.Mun.App., 152 A.2d 566, 567. In the present case, a written stipulation embodying the agreed facts has been filed by the parties and we are satisfied from the record that there was no genuine issue of a material fact and only questions of law are involved leaving the trial court free to grant summary judgment. Chew v. Quesada (D.C.D.C.), 182 F.Supp. 231, 232.

The record discloses that Trans World issued a written invitation on July 31, 1962, to bid on the purchase of 48 submerged boost pumps (Thompson PN T B60200–4), bids to close September 15, 1962. Skyline submitted a written bid on August 31, 1962, to buy them for $5 each which Trans World accepted in writing under date of September 17, 1962, requesting shipping instructions. On September 21, 1962, Skyline furnished this information. On September 24, 1962, Skyline sold these same items to A. C. L. Russo Aviation for $35 each "as is repairable." On October 9, 1962, Trans World wrote Skyline that it regretted the necessity of cancelling the shipment but the items had already been shipped to another

airline on July 16, 1962, under a prior sale dated January 11, 1962. This suit followed.

As bases for its alleged release from the contract, appellant contends that (1) there was a mutual mistake as to the existence of the subject matter; (2) there was impossibility of performance; and (3) the contract had a condition precedent allowing appellant to withdraw at any time if the subject matter of the bargain was non-existent at the time set for performance.

We have had occasion previously to pass upon questions of "mutual mistake" and "impossibility of performance," as affecting release from contractual obligations, in the case of Stern v. Ace Wrecking Co., D.C. Mun.App., 38 A.2d 626, involving substantially the same facts as in the present case. The company had agreed with Stern to demolish certain sheds and to retain the salvaged lumber as its profit. When one-half of the material had been removed, the company was notified that a third party had been previously given the right to the lumber removed. Stern claimed mutual mistake and impossibility of performance. Both defenses were rejected.

(38 A.2d p. 627) "* * * Mistake there may have been; but, if so, it was entirely the mistake of the defendant. (Stern) He it was who undertook to sell the material * * *. The uncontradicted evidence was that defendant knew, and plaintiff did not know, of the superior right of the oil company to the material in question. It is also clear that the defendant had made an unqualified undertaking to deliver the merchandise; and having failed through no fault of the plaintiff, he must pay damages for his failure. We find no decisions to the contrary.

"* * * This defense (impossibility of performance) is analogous to that of mistake—both have the same foundation and neither can prevail if the inability to perform was known to, or foreseeable by, or caused by the prom-isor, and unknown to the promisee. * * * Even if we assume that defendant had forgotten the earlier transfer to the oil company, and that he made the second sale in complete good faith, that would not discharge his duty to appellee * * *."

■ If there were a mistake in the case before us, it was not mutual. Trans World knew, or should have known, of the superior right of the third party to which it had previously sold the subject matter. A bid from appellee was invited, promptly obtained and accepted, and early shipment arranged prior to the time that appellant investigated and found that another section of its organization had already sold the same airline equipment to a third party. Negotiations with appellee had extended over a period of months. The letter attempting cancellation of the contract was dated October 9, 1962, whereas the prior contract was dated January 11, 1962, although the subject matter had not been shipped until July 16, 1962. Having had more than ample time and opportunity to have ascertained that the subject matter had already been sold and having failed, without fault of appellee, to deliver the subject matter of its contract, although having positively agreed to do so, appellant must pay for its failure. Rishel v. Pacific Mut. Life Ins. Co. of California, 10th Cir., 78 F.2d 881; Berg v. Erickson, 8th Cir., 234 F. 817, L.R.A. 1917A 648; Bains v. Ensor, D.C.Mun.App., 39 A.2d 62, 63.

■ With respect to impossibility of performance as a defense, the factual situation does not change. The inability to perform was the sole responsibility of appellant, brought about by its negligent and careless omission to check over a period of time that the subject matter offered and sold to appellee was still in its possession. It had fully approved and accepted the terms of purchase offered by appellee which had performed its part in the contract to date. Appellee was wholly unaware of the in-

ability of appellant to deliver the subject matter until informed by appellant. The fault being that of appellant alone, the unilateral negligent mistake of appellant did not discharge its duty to carry out the contract terms. Embry v. Lewis, Tex.Civ.App., 19 S.W.2d 87, 88. See also Restatement Contracts, Sec. 503.

■ Appellant also argues that paragraph 3 of its *invitation to bid* providing that "TWA reserves the right to withdraw this material from sale without notice" created a *qualified* undertaking of the contract so that the prior sale automatically constituted a withdrawal of "the material from sale without notice." However the next sentence is important—"Bids will close 15 September 1962." In considering this reservation right in the light of subsequent events, it is apparent that the right to withdraw the material from sale referred to the period *prior* to close of bids and to the consummation of the sale, and not to the period after the parties had reached and completed final agreement. It is significant that appellant's letter of October 9, 1962, did not rely upon the reservation statement in its "Sales Bulletin #731:62" but simply "cancelled" the shipment arrangements under the contract. In accepting appellee's unconditional offer, appellant used positive and unequivocal terms including no limiting conditions. After acceptance of the offer to buy, appellee shortly thereafter re-sold the same material at a profit to another aviation concern. Although appellant had a right to expressly provide in its invitation to bid that it could withdraw such material without notice, an unqualified acceptance by it of a bona fide offer to buy completes the contract. Appellant could not then assert that it had revoked in accordance with reserved power, especially after appellee, in reliance upon appellant's acceptance, had re-sold to another purchaser. I Corbin on Contracts § 39, 123 (1950). The Supreme Court held in Allen v. Hammond, 11 Pet. (US) 63, 72, 9 L.Ed. 633, that a vendor is bound to know that he can deliver that which he professes to sell.

No challenge by either party has been presented to the correctness and reasonableness of the damages awarded appellee for breach of its contract and we are therefore not required to consider this question upon appeal.

Affirmed.