George **BASILIKO**, Appellant,

v.

**PARGO CORPORATION**, Appellee.

No. 84–446.

District of Columbia Court of Appeals.

Argued March 4, 1986.
Decided Nov. 10, 1987.

Leonard C. Collins, Washington, D.C., for appellant.

William H. Brain, Potomac, Md., for Montgomery Federal Sav. & Loan Assn.

Before NEWMAN, FERREN* and TERRY, Associate Judges.

NEWMAN, Associate Judge:

In this appeal we are asked to decide what remedy is available to the successful bidder at a foreclosure sale when the trustees fail to convey the mortgaged property after discovering that the borrower was, in fact, not in default the time of the sale. Because we can discern no basis for distinguishing this breach of contract from that by any other vendor of real property who fails to convey for lack of good title, we hold that Basiliko is entitled to contract damages measured by the difference between the foreclosure sale contract price and the fair market value of the property at the time when the property should have been conveyed to him by the trustees. This remedy returns to the foreclosure sale buyer the benefit of the bargain he had struck at that sale.

While Basiliko is entitled to these standard breach of contract damages (protecting his expectation interest in the enforceability of the foreclosure sale contract), he

is not entitled to any special or consequential damages which would permit him to recoup the value of a resale contract that he later entered into with Pargo Corporation. Nevertheless, the price agreed upon for resale may be considered by the trial court, on remand, as evidence of the fair market value of the property at the time when the trustees should have conveyed it to Basiliko.

We reverse and remand for determination of the quantum of damages.

## I.

This controversy arises from a series of unconsummated real estate transactions involving 3411 Holmead Place, Northwest. The property, securing a note held by Montgomery Federal Savings & Loan Association, was scheduled for a Trustee's sale by virtue of a power of sale in the deed of trust on May 1, 1979. The day before the sale, however, on April 30, five minutes before the bank closed for the day, the borrower made a payment curing the delinquency. This payment, while immediately credited to the borrower's account by computer, apparently did not come to the attention of substitute trustees Arnold L. Karp and James A. Early, Jr. before the sale took place on the following day.

George Basiliko entered the successful bid on the property at the auction held on May 1, offering a price of $28,000 and securing his purchase with a $1000 deposit. Two days later, on May 3, 1979, Basiliko entered into a resale contract with Pargo Corporation in which Pargo agreed to pay $35,100 for the Holmead Place property. Basiliko expressly conditioned this sale on his "obtaining good title at [the] foreclosure sale." Pargo, in turn, contracted on May 7, 1979, to sell the same property for $44,000 to Morgan O'Neill Builders.

On May 29, the date scheduled for settlement on the foreclosure sale, trustees Karp and Early refused to convey the property to Basiliko because they had been without authority to hold the sale. When Basiliko

---

* Hubert Pair, *Senior Judge,* was originally a member of this division. Judge Ferren was drawn to replace him pursuant to the Internal Operating Procedures of this court.

subsequently failed to deliver the property to Pargo Corporation, Pargo sued Basiliko, along with Montgomery Federal, Karp and Early. Basiliko cross-claimed against the other defendants. Following trial, Judge Doyle issued an Opinion and Order dismissing on the merits both Pargo's complaint and Basiliko's cross-claim. The dismissal of the cross-claim is the subject of this appeal.[1]

## II.

In his Opinion and Order, Judge Doyle took the view that the purchaser at a void foreclosure sale, "relieved as he is of paying the purchase price ... also loses what would otherwise be his own correlative position as an innocent purchaser for fair value," and that Basiliko therefore "loses any right to sue the trustees and the cestui que trust for breach of contract to recover in damages the benefit of his bargain."[2] We disagree.

■ The long-settled rule in this jurisdiction is that a seller who breaches an executory contract for the sale of real property is liable to the would-be purchaser for compensatory damages measured by the difference between the sales contract price and the fair market value of the property at the time that the property should have been conveyed. *Phillips & Sager v. Kern*, 50 App.D.C. 317, 320, 271 F. 547, 550 (1921); *Quick v. Pointer*, 88 U.S.App.D.C. 47, 186 F.2d 355 (1950) (failure to convey for lack of good title); *Wolf v. Cohen*, 126 U.S.App. D.C. 423, 425, 379 F.2d 477, 479 (1967) (damages for delay in conveyance). The District of Columbia thus follows the "American rule," which allows the frustrated purchaser of real property, like any other victim of a breach of contract, the benefit of the bargain he has negotiated. *See* 5 A. Corbin, Contracts § 1098, at 525 (1964); D. Dobbs, Handbook on the Law of Remedies § 12.8, at 833–36 (1973); *Donovan v. Bachstadt*, 91 N.J. 434, 453 A.2d 160, 163–65 (1982) (adopting "American

rule"). *See also Thompson v. Rector*, 83 U.S.App.D.C. 371, 373, 170 F.2d 167, 169 (1948) (measure of contract damages is "value of the benefit contracted for").

■ This "benefit of the bargain" formula, the standard contract damage remedy, should not be confused with an award of special or consequential damages compensating a disappointed buyer for the value of a *resale* contract with a third party (for example, in this case, the contract between Basiliko and Pargo Corporation). *See generally* Dobbs, *supra*, § 12.1, at 786–87. Our jurisdiction has squarely rejected the availability of damages for the lost profit of anticipated resale. *Quick, supra.*

The trial court's decision would, in effect, apply the "English rule" of *Flureau v. Thornhill*, 2 W.Bl. 1078, 96 Eng.Rep. 635 (C.P.1776), to this case, allowing the disappointed purchaser merely the return of his deposit plus interest and expenses, thereby restoring him to the position he occupied prior to negotiating the contract rather than compensating him for the expectation that has been breached. *See* Corbin, *supra*, § 1097, at 523–24; Dobbs, *supra*, § 12.8, at 833–36; *Donovan, supra*, 453 A.2d at 163–65. We can find no justification in law or policy for such exceptional treatment in the case of a foreclosure sale.

A principal reason given for the development of the *Flureau* rule in England was the absence there of an adequate system for assuring certainty of title. Dobbs, *supra*, § 12.8, at 835; *Donovan, supra*, 453 A.2d at 164. Under such circumstances, the law recognized the unfairness of imposing the risk of this uncertainty on the seller alone. By contrast, in the United States, where recording systems developed, many jurisdictions, including the District of Columbia, have favored a rule treating breach of an executory contract for sale of real property just as breach of any other sales contract. *Id.* (reason for application of English rule has ceased since whether ti-

---

**1.** Pargo Corporation has not appealed the dismissal of the complaint.

**2.** The trial court thus would have limited Basiliko's recovery to the return of his deposit, which it understood to have been already tendered by the cross-defendants.

tles are clear can be ascertained by record searches).

The rationale offered for the English rule suggests why its application would be especially inappropriate to the facts of this case. In the District of Columbia, a purchaser of real estate is entitled to damages for the benefit of his bargain, regardless of the reasons for the seller's breach, including a defect in title that the buyer might have been able to discover before sale. For the District to impose a harsher rule against the purchaser when the cause of the seller's breach involves a matter within the seller's exclusive control, and not detectable by the buyer, would be to turn the logic of *Flureau* on its head. Indeed, even in those jurisdictions following the *Flureau* rule, damages have sometimes been awarded when the seller had been mistaken about his authority to sell land belonging to another, CORBIN, *supra*, § 1097, at 524, or about his ability to obtain title between the date of sale and the date of conveyance, *id.* at 1098, at 529 and n. 65, or fails to convey "for reasons within his control." *St. Pius X House of Retreats v. Diocese of Camden*, 88 N.J. 571, 443 A.2d 1052, 1059 (1982).

■ In this case, the contractual breach was occasioned by a circumstance—the erroneous foreclosure of the loan—that was within the sole knowledge and control of the seller/lender Montgomery Federal and its agents,[3] trustees Karp and Early. Under such circumstances, it would be especially unfair for the buyer to be required to bear the risk of this mistake. *Cf. Trans World Airlines, Inc. v. Skyline Air Parts, Inc.*, 193 A.2d 72, 74 (D.C.1963) (impossibility of performance provides no defense to suit for contract damages against seller of goods who "knew, or should have known" that he did not have right to convey); *Stern v. Ace Wrecking Co.*, 38 A.2d 626, 627 (D.C.1944) (same).

Likewise, the view put forth by the trial court that the applicability of the doctrine of *caveat emptor* to foreclosure sales somehow implicates a distinctive remedy in this case, is plainly wrong for the same reason. A buyer at a foreclosure sale is subject to the rule of *caveat emptor* only in the sense that "a trustee makes no warranty of title and is generally subject to no duty to investigate or describe outstanding liens or encumbrances." *Stuart v. American Security Bank*, 494 A.2d 1333, 1338 (D.C.1985). *See* G. Osborne, Handbook on the Law of Mortgages § 344, at 741 (2d ed. 1970) ("All this [doctrine of *caveat emptor*] means is that the mortgagee in selling does not give, and has no authority to give, any warranty of title; he has power to sell only the title that has been given to him as security." (Footnote omitted)). The rule has no applicability, however, to a mistake relating to the underlying authority of lender or trustee to conduct the sale. Hence, it does not preclude, for example, liability of the mortgagee for misrepresentations in the advertisement of sale or for failure to carry out the sale in accord with the terms of the mortgage. *Id.* Therefore, the rule of *caveat emptor* can provide no basis for exempting the foreclosure sale vendor from the usual obligation that "a vendor is bound to know that he can deliver that which he professes to sell." *Trans World Airlines, supra*, 193 A.2d at 75.

Finally, the contention that it would be bad policy to award benefit of the bargain damages to a disappointed purchaser at a foreclosure sale because such an award

---

**3.** Substitute trustees under a deed of trust have, of course, a fiduciary relationship with both the lender and the borrower. *Perry v. Virginia Mortgage and Investment Co.*, 412 A.2d 1194, 1197 (D.C.1980); *National Life Insurance Co. v. Silverman*, 147 U.S.App.D.C. 56, 72, 454 F.2d 899, 915 (1971); *Sheridan v. Perpetual Building Association*, 112 U.S.App.D.C. 82, 83, 299 F.2d 463, 464 (1962) (en banc). In the context of this controversy, however, the only relevant fiduciary relationship of the trustees is with the lender. In this regard, the trustee is "'basically a trustee of a power to convey title under certain circumstances'" and his discretion is limited by the deed of trust. *Perry, supra*, 412 A.2d at 1197 (citations omitted). In addition, in this case, the trial court found that the trustees acted upon the instructions of the lender in carrying out the erroneous sale. This finding is buttressed by the fact that James A. Early, Jr., one of the two trustees, was, at the time of the transaction, also President of the lender Montgomery Federal Savings & Loan.

would amount to a "windfall" to such a buyer is also without merit. It may be true that prices at foreclosure sales classically surface somewhere below fair market value. *See generally* Washburn, *The Judicial and Legislative Response to Price Inadequacy in Mortgage Foreclosure Sales,* 53 S. CAL.L.REV. 843 (1980). This fact, however, is an argument for—rather than against—the award of benefit of the bargain damages in this case. By awarding contract damages to Basiliko, we assure all future bidders at foreclosure sales that their expectation will be compensated if the seller breaches for reasons such as those that occurred in this case. By compensating foreclosure buyers—just as buyers generally—for this risk, we enhance the public policy of maintaining the adequacy of foreclosure sale prices, *see* Washburn, *supra,* and reinforce the legal duty of trustees to garner a reasonable price for mortgagor and mortgagee, *Holman v. Ryon,* 61 App.D.C. 10, 13, 56 F.2d 307, 310 (1932); *S. & G Investment, Inc. v. Home Federal Savings & Loan Association,* 164 U.S.App.D.C. 263, 272–73, 505 F.2d 370, 379–80 (1974).

### III.

◼ Accordingly, we are unpersuaded of any reason to deviate in this case from our settled rule that a seller who breaches an executory contract for the sale of real property is liable to the frustrated purchaser in contract damages measured by the difference between the sales price of that contract (here, the price contracted for by Basiliko at the foreclosure sale) and the fair market value of the property at the time the property should have been conveyed. On remand, the trial court must determine what that fair market value would have been, guided by the principle that fair market value is "the price that an owner willing but not compelled to sell ought to receive from one willing but not compelled to buy." *Assessors of Quincy v. Boston Consolidated Gas Co.,* 309 Mass. 60, 34 N.E.2d 623, 626 (1941). In making this assessment, the trial court may consider as evidence the price at which Basiliko had agreed to resell the property to Pargo Corporation. A resale contract provides sufficient evidence of fair market value on which to base an award of damages for breach of the initial sales contract. *Downing v. H.G. Smithy Co.,* 125 A.2d 272, 274 (D.C.1956); *see also Rogers v. Lion Transfer & Storage Co.,* 120 U.S.App.D.C. 186, 187, 345 F.2d 80, 81 (1965) (on *buyer's* breach, trial court *must* give some weight to evidence of contemporaneous bona fide sales in assessing fair market value).

We remand for entry of judgment in favor of Basiliko on his cross-claim against Montgomery Federal, Karp, and Early, and for a determination of the amount of damages.

*So ordered.*