# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-00405-SCT

*JAMES D. HOBSON, JR.*

*v.*

*CHASE HOME FINANCE, LLC AND PRIORITY TRUSTEE SERVICES OF MISSISSIPPI, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/20/2014 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY, JR. |
| TRIAL COURT ATTORNEYS: | KENNETH B. RECTOR |
| | MARK HERNDON TYSON |
| | JESSICA LYNN PERRI |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KENNETH B. RECTOR |
| ATTORNEYS FOR APPELLEES: | MARK HERNDON TYSON |
| | STEPHEN THOMAS MASLEY |
| | SHARI V. MORRIS |
| | JESSICA LYNN PERRI |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 12/10/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     James D. Hobson, Jr., cast the highest bid at a foreclosure sale on real property in Warren County. The receipt Hobson obtained at the sale disclaimed that the sale was subject to withdrawal in the event of a timely reinstatement by the obligor on the deed of trust. The day before the sale, Deborah Quimby, the defaulting obligor on the deed of trust, reinstated the loan with Chase Home Finance, the obligee, and Priority Trustee Services of Mississippi, the trustee. Although Hobson's check was returned, he sued Chase and Priority for breach

of contract, arguing that he was entitled to receive the difference in the amount he had bid for the property and the appraised value of the property. The Warren County Court initially granted summary judgment to Hobson and the Circuit Court of Warren County affirmed; but this Court reversed and remanded for a determination of whether Quimby validly had reinstated her loan prior to the foreclosure sale. *Chase Home Finance, L.L.C. v. Hobson*, 81 So. 3d 1097 (Miss. 2012). On remand, the County Court of Warren County granted summary judgment to Chase and Priority and the Circuit Court of Warren County affirmed. Finding no error in the respective judgments of the County Court of Warren County and the Circuit Court of Warren County, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Deborah Quimby, on April 11, 1996, executed a deed of trust through Magnolia Federal Bank for Savings on realty in Warren County, Mississippi, which secured the $66,500 loan she had obtained to purchase the property. On May 1, 2001, the deed of trust was assigned by Union Planters Bank, N.A., successor by acquisition to Magnolia Federal Bank for Savings, to Chase Mortgage Company. Chase Home Finance, LLC (Chase), was successor by merger with Chase Mortgage Company.  Priority Services of Mississippi, LLC (Priority), was substituted as the trustee under the deed of trust on September 19, 2006.

¶3.     Quimby defaulted and, pursuant to the terms of the deed of trust, Priority noticed the sale of the property "for cash to the highest bidder" on February 19, 2008, which was to take place on March 20, 2008, between 11:00 a.m. and 4:00 p.m.  The Substitute Trustee's Notice of Sale was published in the Vicksburg *Post* newspaper on or after February 28, 2008. James

D. Hobson, Jr., read the notice in the newspaper and decided to place a bid on the property. According to his affidavit, Hobson personally appeared at the foreclosure sale on the appointed date and "bid the sum $60,948.82, which bid was the highest and best bid made." Hobson, also according to his affidavit, "paid the agreed purchase price by delivering to Priority's agent a Regions Bank cashier's check in the amount of $60,948.82, which check was received and accepted by Priority's agent." The cashier's check was dated March 20, 2008.

¶4.     The receipt which Hobson received after having tendered the cashier's check bore the following disclaimer: "The sale will not be considered final until all requirements have been met and may be withdrawn based on a timely re-instatement . . . ." On March 31, 2008, the cashier's check Hobson had tendered was returned to him because, "[a]t the time of sale [the] trustee had not been made aware that Ms. Quimby had made timely re-instatement." Consequently, Hobson filed a complaint in the County Court of Warren County against Chase and Priority. He alleged a breach of contract claim: "defendants have failed and refused to tender to plaintiff a trustee's deed to the subject property and have further failed and refused to deliver possession of the subject property to the plaintiff." He sought "an order compelling the defendants to accept the funds previously delivered and paid by the plaintiff in accordance with his accepted bid at the foreclosure sale and to convey by valid trustee's deed the subject property . . . ." Alternatively, Hobson sought "compensatory damages sufficient to compensate him for losses suffered as a consequence of defendants' failure to

fulfill their obligations under the contract, together with punitive damages and reasonable attorney's fees and expenses" not to exceed $75,000.

¶5.    On September 12, 2008, Hobson filed a motion for summary judgment. Attached to Hobson's motion for summary judgment was the affidavit of a licensed real estate appraiser, which indicated that the value of the Warren County property which Hobson had purchased at the foreclosure sale had an appraised value, as of March 20, 2008, of $156,000. As such, Hobson claimed, he was entitled to "damages in the amount of $95,051.18, being the difference in the value of the property and the price paid therefor by Plaintiff."[1]

¶6.    On September 9, 2009, Chase and Priority filed a joint response to Hobson's motion for summary judgment and cross motion for summary judgment. Chase and Priority attached to the cross motion an affidavit from LaShun Palmer, a reinstatement/payoff representative of Prommis Solutions, Inc., which had been retained to "handle the processing of the foreclosure sale and any possible reinstatement of the Property." Palmer, whose office maintained the records of the sale, stated in his affidavit that "the borrower for the subject loan that was in default was provided with reinstatement requirements and she complied with those requirements prior to the foreclosure sale that was cried on March 20, 2008." Palmer further stated that he had taken "the steps necessary to cancel the crying of the sale" but that he had been unsuccessful in so doing.

---

[1]As a result of the change in the amount in controversy, Chase and Priority filed a notice of removal of the case to the United States District Court for the Southern District of Mississippi on September 24, 2008. An order of remand was entered on September 1, 2009.

¶7.    On November 9, 2009, the County Court of Warren County heard oral argument on the respective motions for summary judgment filed by Hobson and Chase/Priority. The court *ore tenus* granted summary judgment to Hobson and awarded him a judgment of $95,051.18, plus prejudgment interest on the judgment from the date of the foreclosure sale on March 20, 2008. The court entered a written judgment on December 1, 2009, which memorialized its award of $95,051.18, plus prejudgment interest, to Hobson and awarded attorney's fees and expenses in the amount of $10,868.60.

¶8.    Chase and Priority appealed the decision of the county court to the Circuit Court of Warren County, which "affirmed summary judgment for Hobson on Chase's liability, holding that the parties had formed a contract and had breached that contract."[2] ***Chase Home Fin., L.L.C. v. Hobson*** (***Hobson I***), 81 So. 3d 1097, 1100 (Miss. 2012). As for damages, "the circuit court held that there were genuine issues as to the existence and amount of damages and ordered a trial on these issues." ***Id.***

¶9.    Chase and Priority then sought interlocutory appeal, which this Court granted on March 30, 2011. This Court found that, "[i]f Quimby did, in fact, reinstate her loan prior to the foreclosure sale, then she was no longer in default and Chase could not convey the property at the foreclosure sale, pursuant to Section 89-1-59. If Chase conducted the sale without statutory authority, then the foreclosure sale was void." ***Id.*** at 1101. The Court noted that: "Absent from the record is a copy of Quimby's check or any other indication of payment made to cure her default. Nor does the record contain any documentation from Chase that

_____

[2] The judgment of the Circuit Court of Warren County in the first appeal of this case does not appear in the record now before this Court.

Quimby has cured the default and reinstated the loan." ***Id.*** at 1101. The Court further found that, while the Palmer affidavit was "sufficient to *create* a genuine issue as to whether Quimby had reinstated her loan prior to the foreclosure sale, it is insufficient to *prove* the matter in Chase's favor under the summary judgment standard." ***Id.*** (emphases in original). This Court therefore reversed the circuit court's affirmance of the grant of summary judgment to Hobson and remanded the case to the county court for further proceedings. ***Id.*** at 1102.

¶10.    On remand, the parties entered a joint stipulation of facts, agreeing that "[o]n March 19, 2008, the Defendants provided the borrower, Deborah Quimby, with a reinstatement quote of $4,840.49. Ms. Quimby timely paid this amount to reinstate her loan. The amount consisted of seven past due monthly payments of $661.25 each, as well as various fees." The stipulation stated that "Ms. Quimby never paid the $912.76 foreclosure fee because Chase reversed and did not charge Ms. Quimby that fee. This $912.76 foreclosure fee consisted of all remaining accrued costs, attorneys' fees and trustees' fees on the amount actually past due."

¶11.    On the basis of the joint stipulation and having filed Exhibit D, which consisted, *inter alia,* of a facsimile copy of a Regions bank check for $4,840.49 from Quimby to Priority dated March 19, 2008, Chase and Priority filed a motion for summary judgment in the County Court of Warren County, arguing that Quimby timely had reinstated her loan prior to the March 20, 2008, foreclosure sale. Hobson responded with a cross motion for summary judgment, arguing that, because Quimby had not paid the $912.76 foreclosure fee, she had

6

not effectively reinstated her loan under Mississippi Code Section 89-1-59 (Rev. 2011) and the foreclosure sale had not been voided by her payment of $4,840.49, entitling Hobson to summary judgment.

¶12.   The county court found that "the borrower had reinstated her loan[,] thus the purported sale of the subject real property to Plaintiff on the courthouse steps was a nullity" and, therefore, granted summary judgment to Chase and Priority and dismissed Hobson's complaint. Hobson's cross motion for summary judgment was denied. Hobson appealed the judgment of the county court to this Court, but a three-justice panel dismissed the appeal, without prejudice, to be filed in the Circuit Court of Warren County. That court affirmed the grant of summary judgment to Chase and Priority, finding that "Quimby never paid the $912.76 in foreclosure fees because Chase reversed that fee and never charged Quimby that amount." Aggrieved, Hobson appealed the judgment to this Court. The following issues are raised by the parties on appeal:

1.      Whether Hobson lacks standing to challenge the reinstatement under Mississippi Code Section 89-1-59.

2.      Whether Quimby properly reinstated the loan under Mississippi Code Section 89-1-59.

3.      Whether the doctrine of *caveat emptor* bars Hobson's claims.

We address each issue in turn.

## DISCUSSION

**1.      Whether Hobson lacks standing to challenge the reinstatement under Mississippi Code Section 89-1-59.**

¶13. Hobson argues on appeal that Quimby did not properly reinstate her loan and therefore had not cured her default under Mississippi Code Section 89-1-59 (Rev. 2011),[3] because a $912.76 "foreclosure fee" consisting of "costs, attorneys' fees and trustees' fees" had not been paid. Chase and Priority respond that Hobson lacks standing to challenge the amount of Quimby's reinstatement payment.

¶14. Chase and Priority argue that Section 89-1-59 was intended as "a safety net for debtors laboring under acceleration clauses . . . ." *Weems v. Transamerica Mortg. Co.*, 770 So. 2d 936, 939 (Miss. 2000). According to Chase and Priority, "Hobson is not a party to the Deed of Trust" and therefore, Hobson lacks standing to challenge the reinstatement because "the

---

[3] Mississippi Code Section 81-1-59 states:

Where there is a series of notes or installment payments secured by a deed of trust, mortgage or other lien, and a provision is inserted in such instrument to secure them to the effect that upon a failure to pay any one (1) note or installment, or the interest thereon, or any part thereof, or for failure to pay taxes or insurance premiums on the property described in such instrument and the subject of such lien, that all the debt secured thereby should become due and collectible, and for any such reason the entire indebtedness shall have been put in default or declared due, the debtor, or any interested party, may at any time before a sale be made under the terms and provisions of such instrument, or by virtue of such lien, stop a threatened sale under the powers contained in such instrument or stop any proceeding in any court to enforce such lien by paying the amount of the note or installment then due or past due by its terms, with all accrued costs, attorneys' fees and trustees' fees on the amount actually past due by the terms of such instrument or lien, rather than the amount accelerated, and such taxes or insurance premiums due and not paid, with proper interest thereon, if such should have been paid by any interested party to such instrument. Any such payment or payments shall reinstate, according to the terms of such instrument, the amount so accelerated, the same as if such amount not due by its terms had not been accelerated or put in default.

8

statute confers no rights on those bidding on or seeking to purchase property at a foreclosure sale."

¶15. It is true, as Chase asserts, that this Court has held that a plaintiff must establish that he or she is a member of the class of persons the legislature intended to protect in its enactment of a particular statute. *See* ***McIntyre v. Farrel Corp.***, 680 So. 2d 858, 863 (Miss. 1996) (In answering a certified question from the United States Court of Appeals for the Fifth Circuit, this Court responded that the legislature "did not intend for manufacturers to be within the protected class of parties" under the statute of repose of Mississippi Code Section 15-1-41.); ***U-Haul Co. v. White***, 232 So. 2d 705, 708 (Miss. 1970) (Plaintiff deemed to have been one of the class of persons intended to be protected by the remedial statute governing "the method and quality of connecting a trailer to a towing vehicle."); ***Cuevas v. Royal D'Iberville Hotel***, 498 So. 2d 346, 349 (Miss. 1986) (legislature did not intend the Mississippi Dram Shop Law to extend to "an adult individual . . . who voluntarily consumes intoxicants and then, by reason of his inebriated condition, injures himself.").

¶16. It is true also, as Chase claims, that "'[t]he general rule for the existence of a private right of action under a statute is that the party claiming such right must establish a legislative intent, express or implied, to impose liability for violations of that statute.'" ***Tunica County v. Gray***, 13 So. 3d 826, 829 (Miss. 2009) (quoting ***Doe v. State ex. rel. Miss. Dep't of Corrs.***, 859 So. 2d 350, 355 (Miss. 2003)). But standing involves a different inquiry from the question of whether a statute is actionable by a particular class of persons.

9

¶17.  "The question of standing is a jurisdictional issue that can be raised at any time by any party or by the Court, and the standard of review is *de novo*. **In re City of Biloxi**, 113 So. 3d 565, 570 (Miss. 2013) (citing **Hall v. City of Ridgeland**, 37 So. 3d 25, 33 (Miss. 2010)). "Standing is an aspect of subject matter jurisdiction." **SASS Muni-V, LLC v. DeSoto Cty.**, 170 So. 3d 441, 445 (Miss. 2015) (citing **Kirk v. Pope**, 973 So. 2d 981, 990 (Miss. 2007)). "'The existence of subject-matter jurisdiction . . . turns on the well pleaded allegations of the complaint which are taken as true.'" **SASS Muni-V**, 170 So. 3d at 445 (quoting **Am. Fid. Fire Ins. Co. v. Athens Stove Works, Inc.**, 481 So. 2d 292, 296 (Miss. 1985)).

¶18.  The requirements for standing in Mississippi "'are quite liberal.'" **SASS Muni-V**, 170 So. 3d at 445-46 (quoting **State v. Quitman Cty.**, 807 So. 2d 401, 405 (Miss. 2001)). In order to determine whether a party has standing, this Court considers "whether the plaintiff asserts a 'colorable interest in the subject-matter of the litigation or experience[s] an adverse effect from the conduct of the defendant, or as otherwise provided by law.'" **Hotboxxx, LLC v. City of Gulfport**, 154 So. 3d 21, 27 (Miss. 2015) (quoting **Kinney v. Catholic Diocese of Biloxi, Inc.**, 142 So. 3d 407, 412-13 (Miss. 2014)). Whether a plaintiff has a "colorable interest in the subject-matter of the litigation" requires a determination of "'whether the particular plaintiff had a right to judicial enforcement of a legal duty of the defendant or . . . whether a party plaintiff . . . can show in himself a *present*, *existent* actionable title or interest, and demonstrate that this right was complete at the time of the institution of the action.'" **Hotboxxx**, 154 So. 3d at 27 (citing **City of Picayune v. S. Reg'l Corp.**, 916 So. 3d 510, 526 (Miss. 2005) (emphasis in original)).

¶19.    In *SASS Muni-V*, SASS had purchased a piece of real property at a tax sale and, after the two-year statutory redemption period, filed a complaint in the DeSoto County Chancery Court, requesting that the court "declare the tax sale void and . . . order a refund of the purchase price." *SASS Muni-V*, 170 So. 3d at 443. DeSoto County sought dismissal on the basis of standing, arguing that"the tax-sale statutes were enacted for the protection of landowners and lienholders, not tax-sale purchasers." *Id.* at 444. This Court rejected that argument, finding that "SASS simply challenges the chancery clerk's actual compliance with the notice procedure required by law." *Id.* at 448. Ultimately, the Court held that, "[u]nder Mississippi's liberal standing requirements, . . . a tax-sale purchaser has standing to challenge the validity of the sale under the notice provisions of the tax-sale statutes." *Id.* at 449. According to this Court, "SASS's interest in the validity of its title to the property gives it standing to challenge the chancery clerk's compliance with the notice statutes." *Id.*

¶20.    Here, Hobson claims that his purchase of the subject property at the foreclosure sale was valid, and that he is entitled to damages, by virtue of Chase's alleged failure to comply with Section 89-1-59 in reinstating Quimby's loan in the absence of her having paid "all accrued costs, attorneys' fees and trustees' fees." As this Court ruled in *Hobson I*, "[i]f Quimby did, in fact, reinstate her loan prior to the foreclosure sale, then she was no longer in default and Chase could not convey the property at the foreclosure sale, pursuant to Section 89-1-59. If Chase conducted the sale without statutory authority, then the foreclosure sale was void." *Hobson I*, 81 So. 3d at 1101. It cannot be said that Hobson had no

11

"'colorable interest in the subject-matter of the litigation.'" ***Hotboxxx***, 154 So. 3d at 27 (quoting ***Kinney***, 142 So. 3d at 413).

¶21.    This Court finds no merit in the argument of Chase and Priority that Hobson lacked standing to challenge Quimby's alleged failure to cure default under Mississippi Code Section 89-1-59.

### 2.    Whether Quimby properly reinstated the loan under Mississippi Code Section 89-1-59.

¶22.    Hobson argues that his purchase at the foreclosure sale cannot be rendered void because Chase and Priority did not require Quimby to pay "all accrued costs, attorneys' fees and trustees' fees" and, therefore, Quimby did not validly reinstate the loan under Section 89-1-59. He claims that "an invalid and unenforceable agreement between Quimby and Chase to reinstate Quimby's loan . . . cannot be deemed legally sufficient to render void the subsequent foreclosure sale to a third party without notice."

¶23.    In ***Hobson I***, the only thing the defendants had submitted in support of their motion for summary judgment was an affidavit by LaShun Palmer, a restatement/payoff representative, in which the affiant swore that Quimby "was provided with reinstatement requirements and . . . complied with those requirements prior to the foreclosure sale that was cried on March 20, 2008." "Absent from the record is a copy of Quimby's check or any other indication of payment made to cure her default. Nor does the record contain any documentation from Chase that Quimby has cured the default and reinstated the loan." ***Hobson I***, 81 So. 3d at 1101. Because the Palmer affidavit was insufficient to entitle Chase/Priority to summary judgment, this Court reversed the grant of summary judgment that

12

the County Court of Warren County had entered in favor of Hobson and we remanded the case for a determination of "whether Quimby reinstated her loan prior to the foreclosure sale." ***Hobson I*** , 81 So. 3d at 1101, 1102. "If she did," this Court continued, "then Hobson's breach-of-contract claim fails, and judgment should be entered for defendants." ***Id.*** at 1102.

¶24. On remand, Hobson and Chase/Priority entered into a joint stipulation of facts, agreeing that "[o]n March 19, 2008, the Defendants provided the borrower, Deborah Quimby, with a reinstatement quote of $4,840.49. Ms. Quimby timely paid this amount to reinstate her loan. The amount consisted of seven past due monthly payments of $661.25 each, as well as various fees." The stipulation went on to say that "Ms. Quimby never paid the $912.76 foreclosure fee because Chase reversed and did not charge Ms. Quimby that fee." Chase's and Priority's motion for summary judgment, which highlighted the stipulation, was accompanied by a facsimile copy of a Regions bank check for $4,840.49 from Quimby to Priority dated March 19, 2008. The County Court of Warren County granted summary judgment to Chase and Priority and the Circuit Court of Warren County affirmed.

¶25. This Court employs a *de novo* standard of review when considering a trial court's grant or denial of summary judgment. ***WW, Inc. v. Rainbow Casino-Vicksburg P'ship, L.P.***, 68 So. 3d 1290, 1292 (Miss. 2011). Motions for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ***Id.*** (citing Miss. R. Civ. P. 56(c)). "The party moving for summary judgment bears the burden of showing that no genuine issue

of material fact exists." ***Id.*** (citing ***Bennett v. Hill-Boren, P.C.***, 52 So. 3d 364, 368 (Miss. 2011)).

¶26.    This Court has held that, in order "[t]o obtain reinstatement of the obligation and to avoid foreclosure, the obligor must before the sale pay all sums due including 'all accrued costs, attorneys' fees and trustees' fees.'" ***Kaiser Invs., Inc. v. Davis***, 538 So. 2d 427, 429 (Miss. 1989) (quoting Miss. Code Ann. § 89-1-59 (Supp. 1988)). However, "[p]arties to such secured transactions may ordinarily contract as they wish with regard to trustee's fees and attorney's fees." ***Davis***, 538 So. 2d at 429 (citing ***Mississippi Hill Delta Savs. & Loan Ass'n. v. The Valley Bank***, 392 So. 2d 1126, 1129 (Miss. 1981)). "Those fees shall be measured by the terms of the note and deed of trust." ***Davis***, 538 So. 2d at 429.  That case law is consistent with the current version of the statute:

> . . . the debtor, or any interested party, may at any time before a sale be made under the terms and provisions of such instrument, or by virtue of such lien, stop a threatened sale under the powers contained in such instrument or stop any proceeding in any court to enforce such lien by paying the amount of the note or installment then due or past due by its terms, *with all accrued costs, attorneys' fees and trustees' fees on the amount actually past due by the terms of such instrument or lien*, rather than the amount accelerated, and such taxes or insurance premiums due and not paid, with proper interest thereon, if such should have been paid by any interested party to such instrument. Any such payment or payments shall reinstate, according to the terms of such instrument, the amount so accelerated, the same as if such amount not due by its terms had not been accelerated or put in default.

Miss. Code Ann. § 89-1-59 (Rev. 2011) (emphasis added). The statutory language refers to the "terms of such instrument or lien" in order to ascertain "accrued costs, attorneys' fees and trustees' fees on the amount actually past due." *Id.*

14

¶27. The deed of trust in the present case contained a clause entitled "Acceleration; Remedies," which provided that "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . ." This provision also stated that "[i]f the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument . . . and may invoke the power of sale." "Lender shall be *entitled* to collect all expenses incurred in pursuing the remedies provided in this paragraph . . . , including, but not limited to, reasonable attorneys' fees and costs of title evidence." (Emphasis added.)

¶28. The reinstatement was not an "alleged agreement between Quimby and Chase/Priority to pay and accept less than the full amount of the arrearage," as Hobson argues. Instead, Chase and Priority, upon receiving the payment from Quimby on March 19, 2008, the day before the foreclosure sale to Hobson, "reversed and did not charge Ms. Quimby" the $912.76 "foreclosure fee consist[ing] of all remaining accrued costs, attorneys' fees and trustees' fees on the amount actually past due." Quimby's check to Priority, dated March 19, 2008, was for $4,840.49, which, according to Chase's reinstatement quote, included the $912.76 foreclosure fee.[4] The statute requires nothing more than compliance with the terms of the security instrument. Miss. Code Ann. § 89-1-59 (Rev. 2011) ("all accrued costs, attorneys' fees and trustees' fees on the amount actually past due *by the terms of such*

---

[4] Although this statement contradicts the portion of the joint stipulation of facts that says the $912.76 foreclosure fee had been "reversed," it is what the record reflects. The reinstatement quote from Chase included $912.76 in the total quote of $4,840.49 to reinstate. Quimby paid $4,840.49 by check dated March 19, 2008.

*instrument or lien . . . .*") (emphasis added). Furthermore, this Court long has "held that a party to a contract may by words or conduct waive a right to which he would otherwise have been entitled." *Canizaro v. Mobile Commc'ns Corp. of America*, 655 So. 2d 25, 29 (Miss. 1995) (citing *Mariana v. Hennington*, 229 Miss. 212, 90 So. 2d 356, 362 (1956)). Chase and Priority could have demanded those fees from Quimby had they so desired, but they opted, according to the joint stipulation, to "reverse" those fees. Chase and Priority thereby waived the provisions of the deed of trust that had authorized them to collect the fees in question.

¶29.    Hobson cites cases from the Mississippi Court of Appeals and from the United States District Court for the District of Hawaii to support his argument that the "agreement" between Quimby and Chase/Priority was invalid and that such agreement "cannot be deemed legally sufficient to render void the subsequent foreclosure sale to a third party without notice." But *Thompson v. First American National Bank*, cited by Hobson, involved a delinquent debtor who claimed that First American's teller had advised him that "two payments would be enough to stop the foreclosure." *Thompson v. First Am. Nat'l Bank*, 19 So. 3d 784, 786 (Miss. Ct. App. 2009). Thompson sued First American for wrongful foreclosure, the trial court granted summary judgment to First American, and the Court of Appeals affirmed. *Id.* at 786, 789. The Court of Appeals held that "the alleged agreement between Thompson and the bank teller was barred by the statute of frauds and there was no additional consideration for the alleged forbearance by First American." *Id.* at 788.

¶30.    In *Hele Ku KB, LLC v. BAC Home Loans Servicing, LP*, the United States District Court for the District of Hawaii considered whether an oral forbearance agreement was

16

sufficient to invalidate a subsequent foreclosure sale. ***Hele Ku KB, LLC v. BAC Home Loans Servicing, LP***, 873 F. Supp. 2d 1268, 1284-85 (D. Haw. 2012). The district court examined other cases in which a written forbearance agreement, along with some evidence of the delinquent debtor's having made satisfaction, was sufficient to overcome a subsequent foreclosure sale: "nothing in . . . the cases cited . . . allows this Court to rule that Defendant's oral forbearance agreement, which was not accompanied by either the Samsons' satisfaction of their arrearage or an agreement as to how the arrearage would be satisfied, renders the Sale of the Property to Plaintiff void." ***Id.*** at 1285.

¶31.    In the present case, whether there was or was not a verbal agreement is irrelevant. The record reflects that Quimby received a specific reinstatement quote from Chase/Priority and that she satisfied that on March 19, 2008, the day before the foreclosure sale on March 20, 2008. Furthermore, Hobson had very clear notice that reinstatement by the original obligor was a possibility. The receipt Hobson obtained on March 20, 2008, bore the following disclaimer: "The sale will not be considered final until all requirements have been met and may be withdrawn based on a timely re-instatement . . . ." It cannot be said that Hobson had no notice that reinstatement was a possibility at the time he purchased the property.

¶32.    Sufficient evidence supports the grant of summary judgment to Chase and Priority in this case.

### 3.    Whether the doctrine of *caveat emptor* bars Hobson's claims.

¶33.    Hobson argues that the doctrine of *caveat emptor* does not operate to bar his claims. In support of his contention, Hobson cites a case from the District of Columbia Court of

Appeals: "A buyer at a foreclosure sale is subject to the rule of *caveat emptor* only in the sense that 'a trustee makes no warranty of title and is generally subject to no duty to investigate or describe outstanding liens or encumbrances.'" ***Basiliko v. Pargo Corp.***, 532 A.2d 1346, 1349 (D.C. App. 1987) (quoting ***Stuart v. Am. Security Bank***, 494 A.2d 1333, 1338 (D.C. 1985)).

¶34.    It is true that the District of Columbia Court of Appeals applied the "long-settled rule" in the District of Columbia "that a seller who breaches an executory contract for the sale of real property is liable to the would-be purchaser for compensatory damages measured by the difference between the sales contract price and the fair market value of the property at the time that the property should have been conveyed." ***Basiliko***, 532 A.2d at 1348 (citations omitted). But, in that case, the trustees, after the foreclosure sale, refused to convey the property to Basiliko, the successful bidder, after having determined that they were without authority to hold the sale based on a mistake. ***Id.*** at 1347, 1349. The court ruled that *caveat emptor* "has no applicability . . . to a mistake relating to the underlying authority of the lender or trustee to conduct the sale." ***Id.*** at 1347, 1349. The court continued that *caveat emptor* likewise would "not preclude . . . liability of the mortgagee for misrepresentations in the advertisement of the sale or for failure to carry out the sale in accord with the terms of the mortgage." ***Basiliko***, 532 A.2d at 1349 (citing ***Stuart v. Am. Sec. Bank***, 494 A.2d at 1338)).

¶35.    ***Basiliko*** has no application to the present case. Here, the receipt Hobson obtained bore the following disclaimer: "The sale will not be considered final until all requirements have been met and may be withdrawn based on a timely re-instatement . . . ." There was no

18

"mistake relating to the underlying authority of the lender or trustee to conduct the sale."

Instead, the day before the foreclosure sale, Quimby cured her default, and Hobson cannot

claim that he was not on notice that such an eventuality was within the realm of possibility.

¶36.   Furthermore, as recognized by this Court in *Hobson I*, under Mississippi law,

"[c]aveat emptor still reigns at foreclosure sales." *Hobson I*, 81 So. 3d at 1100 (quoting *Hill*

*v. Thompson*, 564 So. 2d 1, 11 (Miss. 1989)). This Court long ago held that:

> The principle has been frequently sanctioned by this court, that an administrator selling property by authority of an order of the Probate Court, sells only such title as was in his intestate, and the purchaser takes the title at his risk. *Mellon v. Boarman*, 13 S.&M. 100 [21 Miss. 100 (1849)]. And accordingly it is well settled here, that the rule *caveat emptor*, is applicable with great strictness to all such sales. *Joslin v. Caughlin et al.*[,] 26 Miss. [134 (1853)]; *Hutchins et al. v. Brooks*, 31 [Miss.] 430 [(1856)]; *George v. Bean et al.*[,] 30 Miss. 147 [(1855)]. It follows that the purchaser at such a sale, purchases at his peril, as a purchaser at sheriff's sale, and that he cannot be discharged from his contract because of the defective title of the intestate.

*Cogan v. Frisby*, 36 Miss. 178, 185 (1858). The Court observed that: "[t]his rule may seem

to operate as a hardship upon such purchasers. But they have the same means of protecting

themselves as purchasers at sheriffs' and other judicial sales, by an examination into the title

before the purchase." *Id.* That reasoning applies to this case, especially in light of Hobson's

actual knowledge that his purchase was subject to withdrawal "based on a timely re-

instatement."

¶37.   In the context of tax sales, this Court has held that:

> "[T]he purchaser at a tax sale buys strictly under the rule of *caveat emptor*." In the absence of any statutory provision to the contrary, there is no warranty on the part of the state, or other public body making the sale and if the purchaser's title proves defective for want of compliance with the law in

19

proceedings leading up to the sale or in the conduct of the sale, he has no affirmative remedy other than that which is provided by statute.

*Parsons v. Marshall*, 243 Miss. 719, 139 So. 2d 833, 837 (1962) (citations omitted); *see SASS Muni-V*, 170 So. 3d at 448-49 (*caveat emptor* inapplicable to SASS's claim because SASS "is not attempting to sue any other party for damages caused by the alleged defective sale," rather, "SASS seeks a refund of its purchase price, a remedy specifically provided for in Sections 27-43-3 and 27-43-11.") Here, Section 89-1-59 provides no remedy to a third party whose purchase of property at a foreclosure sale is invalidated by a timely reinstatement of the loan. In fact, "bidders or purchasers . . . are chargeable with notice and knowledge of the existing statutory requirements for a valid sale, and the statutory conditions upon which a valid deed may be acquired; and must be held to have purchased subject to such statutory provisions." *Everett v. Williamson*, 163 Miss. 848, 143 So. 690, 692 (1932).

¶38. Today, as in 1858, the doctrine of *caveat emptor* "is applicable with great strictness" to Hobson's purchase of the subject property. *Cogan*, 36 Miss. at 185.

## CONCLUSION

¶39. Hobson had standing to challenge the statutory compliance of Chase and Priority in reinstating Quimby's loan. Nevertheless, summary judgment rightly was granted in favor of Chase and Priority because sufficient evidence was presented to the Circuit Court of Warren County that Chase and Priority had complied with statutory requirements in reinstating Quimby's loan. Moreover, the doctrine of *caveat emptor* barred Hobson's claims. We affirm the judgment of the Circuit Court of Warren County.

¶40. **AFFIRMED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, PIERCE, KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., NOT PARTICIPATING.**