COLEMAN, JUSTICE, DISSENTING:
 

 ¶31. The Court of Appeals held that Claire and Jane have standing to request an accounting of their mother's estate and testamentary trust. I agree with the Court of Appeals and, accordingly, would affirm. The majority agrees that Claire and Jane do, in fact, have standing. Maj. Op. at ¶ 3. However, I must, with respect, dissent, because the majority considers the merits of the sisters' request for an accounting and thereby affirms the chancery court and reverses the Court of Appeals on an issue not reached by it. While the chancellor's final judgment does rely in part on a 2008 order denying Claire's initial request for an accounting in denying the newer request by both Claire and Jane years later, Jane was not a party in 2008. Moreover, the chancellor's May 6, 2016, final Decree discussed at length the effect of the nature of the sisters' interest in the trust on their ability to bring the request for accounting. The chancellor wrote, "Claire Clements Flowers and Brenda Jane Flowers have no standing to file any pleadings or other matter in this cause."
 

 ¶32. A majority of the Court of Appeals held that Claire and Jane "have
 
 standing to request an accounting
 
 of their mother's estate and testamentary trust pursuant to their limited rights."
 
 In re Flowers v. Flowers
 
 , No. 2016-CA-00800-COA, --- So.3d ----, ----,
 
 2018 WL 718626
 
 , at *3 (¶ 15) (Miss. Ct. App. Feb. 6, 2018) (emphasis added). Judge Tindell disagreed, writing that he would "affirm the chancellor's judgment that the [daughters]
 
 lack standing to request an accounting
 
 ."
 

 Id.
 

 at ----,
 
 2018 WL 718626
 
 , at *8 (¶ 34) (Tindell, J., concurring in part and dissenting in part) (emphasis added). Although the Court of Appeals was divided, it agreed that the issue before it the chancellor's determination as to standing. Accordingly, the majority miscasts the case when it writes that "[w]e granted certiorari to determine whether the chancellor abused his discretion in denying the Claire and Jane's accounting request." Maj. Op. ¶ 15. The majority holds that the "chancellor was well within his discretionary authority to deny the Claire and Jane's accounting request." Maj. Op. ¶ 29. However, the record is clear that the chancellor based his denial
 on the perceived lack of standing rather than on the merits of the request for an accounting; he dismissed the request for lack of jurisdiction. "Standing is an aspect of subject matter jurisdiction."
 
 Hobson v. Chase Home Fin., LLC
 
 ,
 
 179 So.3d 1026
 
 , 1031 (¶ 17) (Miss. 2015). We review standing
 
 de novo.
 

 Id.
 

 Accordingly, no decision exists from the trial court that we can review for abuse of discretion.
 

 ¶33. As noted above, the majority agrees that the trial court erred in finding the sisters lacked standing. The majority writes, "We granted
 
 certiorari
 
 to determine not whether the sisters possess standing,
 
 because we agree that they do
 
 , but to determine whether the chancellor abused his discretion in denying the sisters accounting request." Maj. Op. ¶ 3 (emphasis added). Despite the majority's apparent reversal of the chancellor on the issue of standing, the majority affirms the chancellor by deciding an issue no lower court has fully addressed-the merits of the Claire and Jane's request for an accounting. For reasons more fully set forth below, I agree with the majority that the chancellor erred in finding the sisters lacked standing. However, because the chancellor's dismissal of the request for an accounting prevented the consideration of the merits of the request in the trial court-especially as to Jane-and quite possibly prevented the full development of a record to inform our consideration of the merits, I would remand the case rather than reach the merits for the first time on appeal. "One of the most fundamental and long established rules of law in Mississippi is that the Mississippi Supreme Court will not review matters on appeal that were not raised at the trial court level."
 
 Miss. Transp. Comm'n v. Adams
 
 ,
 
 197 So.3d 406
 
 , 416 (¶ 30) (Miss. 2016) ;
 
 see also
 

 Whittington v. H.T. Cottam Co.
 
 ,
 
 158 Miss. 847
 
 ,
 
 130 So. 745
 
 , 749 (1930) ("If th[e] [C]ourt will decide correctly the questions presented and briefed in cases, it will be doing well, without going out on a hunt for other questions.").
 

 ¶34. Standing is a question of law reviewed under a
 
 de novo
 
 standard.
 
 SASS Muni-V, LLC v. DeSoto Cty.
 
 ,
 
 170 So.3d 441
 
 , 445 (¶ 12) (Miss. 2015). "Standing is an aspect of subject matter jurisdiction."
 
 Hobson
 
 ,
 
 179 So.3d at 1031
 
 (¶ 17) ;
 
 see also
 

 In re City of Biloxi
 
 ,
 
 113 So.3d 565
 
 , 570 (¶ 13) (Miss. 2013) ("[T]he question of standing is a jurisdictional issue that can be raised at any time by any party or by the Court, and the standard of review is
 
 de novo
 
 ."). "The existence of subject-matter jurisdiction ... turns on the well pleaded allegations of the complaint which are taken as true."
 
 Hobson
 
 ,
 
 179 So.3d at 1032
 
 (¶ 17) (quoting
 
 SASS Muni-V
 
 ,
 
 170 So.3d at
 
 445 ).
 

 ¶35. The Court has defined the requirements of standing:
 

 It is well settled that Mississippi's standing requirements are quite liberal compared to the standing requirements set out in Article III of the United States Constitution. To have standing to sue, a party must assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise authorized by law. An interest is deemed colorable if it appears to be true, valid, or right. An individual's legal interest or entitlement to assert a claim against a defendant must be grounded in some legal right recognized by law, whether by statute or by common law. For a plaintiff to establish standing on grounds of experiencing an adverse effect from the conduct of the defendant/appellee, the adverse effect experienced must be different from the adverse effect experienced by the general public.
 

 SASS Muni-V
 
 ,
 
 170 So.3d at 445-46
 
 (¶ 13) (citations and quotations omitted).
 

 ¶36. In the case
 
 sub judice
 
 , the Mississippi Court of Appeals was divided on the issue of standing; however, it agreed about the issue presented. The Court of Appeals wrote, "Since standing is a jurisdictional issue, we review it
 
 de novo
 
 ."
 
 Flowers
 
 , --- So.3d at ----,
 
 2018 WL 718626
 
 , at *3 (¶ 15). The Court of Appeals held that Claire and Jane "have limited rights and related standing as holders of a shifting executory interest to prevent future waste, and [it held] that the [daughters] have standing to request an accounting of their mother's estate and testamentary trust pursuant to their limited rights."
 

 Id.
 

 at ----,
 
 2018 WL 718626
 
 , at *1 (¶ 2). The Court of Appeals, relying on
 
 In re Estate of Baumgardner
 
 ,
 
 82 So.3d 592
 
 (Miss. 2012) and
 
 Hemphill v. Mississippi State Highway Commission
 
 ,
 
 245 Miss. 33
 
 ,
 
 145 So.2d 455
 
 (1962), wrote that "Mississippi precedent clearly establishes that vested remainder beneficiaries of a testamentary trust have standing to file suit and that holders of a shifting executory interest have some limited rights that can provide standing to file suit."
 
 Flowers
 
 , --- So.3d at ----,
 
 2018 WL 718626
 
 , at *4 (¶ 17). The Court of Appeals concluded that Claire and Jane "possess a shifting executory interest in their mother's testamentary trust" and, as a result, they "possess limited rights to prevent future waste."
 

 Id.
 

 at ----,
 
 2018 WL 718626
 
 , at *4 (¶ 18).
 

 ¶37. The Court of Appeals, relying on
 
 Hemphill
 
 , recognized "an independent value and significance on future interests" that exists whether the interest is "vested or not."
 

 Id.
 

 at ----,
 
 2018 WL 718626
 
 , at *5 (¶ 21). The Court of Appeals held that Claire and Jane's contingent remainder interest " 'has achieved status as a protectable interest for many purposes' when the 'contingent remainder is limited to an existing ascertained person'...."
 

 Id.
 

 (quoting
 
 Hemphill
 
 ,
 
 145 So.2d at
 
 462 ). As such, the Court of Appeals wrote that "when a contingent remainder is limited to an existing ascertained person, there is no question but that the courts will recognize the interest as having present existence."
 
 Flowers
 
 , --- So.3d at ----,
 
 2018 WL 718626
 
 , at *5 (¶ 21) (quoting
 
 Hemphill
 
 ,
 
 145 So.2d at
 
 462 ). The Court of Appeals held that the chancellor erred in denying Claire and Jane's request for an accounting of their mother's estate and testamentary trust; "[a]s holders of a shifting executory interest in their mother's estate, Claire and Jane possess limited rights to enjoin the possessory owners from future waste of the estate."
 
 Flowers
 
 , --- So.3d at ----,
 
 2018 WL 718626
 
 , at *5 (¶ 22). As such, the Court of Appeals reversed the chancellor's judgment finding that the daughters lacked standing to request an accounting.
 

 Id.
 

 ¶38. Judge Tindell dissented in part and wrote a separate opinion, joined by Judge Wilson.
 

 Id.
 

 at ----,
 
 2018 WL 718626
 
 , at *7-8 (¶¶ 31-36) (Tindell, J., concurring in part and dissenting in part). Judge Tindell wrote that, while he agreed that the daughters had a shifting executory interest in their mother's testamentary trust, the language of the will "gave the [daughters] a purely executory interest that has not become possessory."
 

 Id.
 

 at ----,
 
 2018 WL 718626
 
 , at *8 (¶ 35) (Tindell, J., concurring in part and dissenting in part). Judge Tindell reasoned, "The 'vested or not' status of the shifting executory interests is an important distinction that must be considered. And furthermore, unlike the majority, I find that the [daughters]' executory interest has never vested."
 

 Id.
 

 at ----,
 
 2018 WL 718626
 
 , at *7 (¶ 33) (Tindell, J., concurring in part and dissenting in part). Judge Tindell, relying on
 
 Bridgforth v. Gray
 
 ,
 
 222 So.2d 670
 
 , 672 (Miss. 1969), concluded that the daughters' "executory interest
 remains unvested and, as a result, they lack standing necessary to demand an accounting of their mother's trust."
 

 Id.
 

 at ----,
 
 2018 WL 718626
 
 , at *8 (¶ 35) (Tindell, J., concurring in part and dissenting in part).
 

 ¶39. In denying that the request for an accounting, the majority concludes that "[b]ased upon our review of the record, Claire and Jane have made no such showing of mismanagement." Maj. Op. ¶ 24. However, for purposes of determining the issue of standing, "[t]he existence of subject-matter jurisdiction turns on the well pleaded allegations of the complaint which are taken as true."
 
 Hobson
 
 ,
 
 179 So.3d at 1032
 
 (¶ 17). Thus, for purposes of evaluating standing, we must accept Claire's petition alleging that Knox and others associated with the administration of Brenda's estate had mismanaged and misappropriated the estate and trust assets.
 
 Flowers
 
 , --- So.3d at ----,
 
 2018 WL 718626
 
 , at *2 (¶ 7). Accepting Claire and Jane's petition as true, we proceed to the issue of whether they enjoy standing to request an accounting.
 

 ¶40. Claire and Jane's legal interest or entitlement to assert a claim against a defendant must be grounded in some legal right recognized by law, whether by statute or by common law.
 
 SASS Muni-V
 
 ,
 
 170 So.3d at 446
 
 (¶ 13). The Court's opinion in
 
 Baumgardner
 
 serves as a guide to determine what type of interest Claire and Jane might have in their mother's estate. In
 
 Baumgardner
 
 , Veronica Arrington claimed that certain trusts created by her father Harold Baumgardner had been mismanaged by William Ready.
 
 Baumgardner
 
 ,
 
 82 So.3d at 596
 
 (¶ 1). Ready denied Arrington's request for an accounting.
 

 Id.
 

 The chancery court found that the trustee should not be required to render an accounting to Arrington.
 

 Id.
 

 On appeal, Ready argued that Arrington did not have standing to bring a claim against him, because she had no colorable interest in the trusts.
 

 Id.
 

 at 599
 
 (¶ 20). Ready also argued that under the will at issue, Arrington had only a contingent remainder interest in the trust property while Emogene [ (Harold's wife) ] was still alive-the contingency being that the trust corpus might be used to support Emogene and that the assets might have been exhausted by the time Arrington's interest vested.
 

 Id.
 

 ¶41. The
 
 Baumgardner
 
 Court wrote,
 

 Although Arrington did not have a present possessory interest in the property at the time she filed suit, her remainder interest was vested. The law favors vesting of remainders, and a remainder interest will be contingent only if the testator clearly intended such.
 
 McClelland v. Bank of Clarksdale
 
 ,
 
 238 Miss. 557
 
 ,
 
 119 So.2d 262
 
 , 267 (1960). "A remainder interest in an irrevocable trust represents a present fixed right to future enjoyment that gives rise to a vested property interest in trust property even if that interest is subject to complete divestment or defeasance." 76 Am. Jur. 2d
 
 Trusts
 
 § 252 (2005).
 
 See also
 

 Hays v. Cole
 
 ,
 
 221 Miss. 459
 
 , 473,
 
 73 So.2d 258
 
 , 264 (1954) ("If there is a present right to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate.");
 
 McClelland
 
 ,
 
 119 So.2d at 267
 
 ("[A] gift of a life estate with remainder to a named person creates a vested remainder on the death of the testator."). Because Arrington's interest in the trust property was vested, Ready's argument that she does not have standing because her interest was contingent has no merit.
 

 In sum, we find that Ready's contention that Arrington did not have standing to file suit against him as trustee is without merit. Standing is determined at the
 commencement of the suit.
 
 Burley
 
 [
 
 v. Douglas
 
 ], 26 So.3d [1013,] 1020 [ (Miss. 2009) ]. At that time, Arrington had standing as conservator of Emogene's estate and person, and by her remainder interest in the trust property. Moreover, Ready's assertion that Arrington lacked standing because her interest in the trust property was contingent fails because Arrington had a vested remainder interest in the property.
 

 Baumgardner
 
 ,
 
 82 So.3d at 600-01
 
 (¶¶ 27-28).
 

 ¶42. In its writ of
 
 certiorari
 
 , the estate contends that the Court of Appeals' decision is erroneous, because it failed to apply the two part test announced in
 
 Hemphill
 

 .
 

 See
 

 Hemphill
 
 ,
 
 145 So.2d at 464
 
 (discussing that "[t]he owner of a future interest must fulfill two requirements in order to receive compensation."). I agree with Judge Tindell's dissent to the extent that the two part test is inapplicable to the facts of the present case, which do not involve a taking. Although the two part test is inapplicable, the
 
 Hemphill
 
 Court's discussion of owners of executory interests is applicable, apart from the analysis specific to the constitutional issue of a taking. The
 
 Hemphill
 
 Court wrote that "[t]he owner of an executory interest has certain limited rights to enjoin the possessory owner from waste of the inheritance, and to recover damages for injuries which diminish substantially its value."
 
 Hemphill
 
 ,
 
 145 So.2d at 461
 
 . The Court further explained
 

 Moreover, the owner of a future interest must have his "day in court", or its equivalent, before a claim affecting it can effectively secure judicial sanction. This rests upon the constitutional provision for due process. Hence a living owner of a future interest is generally a necessary party to any litigation affecting it. 2 Powell, Real Property, §§ 294, 295;
 
 Russell v. Federal Land Bank
 
 ,
 
 180 Miss. 55
 
 ,
 
 176 So. 737
 
 (1937).
 
 This same principle should apply to a proceeding to condemn or take property by the state.
 

 These characteristics illustrate "the unique feature of the concept of the future interest in Anglo-American law." It is that 'a future interest is property which now exists.' 1 American Law of Property, § 4.1. It is distinguished from a present interest in that the privilege of possession or enjoyment is future and not present. Hence "the preferred view today is that all varieties of future interests are existing interests."
 

 This doctrine of the nature of future interests is more logical and factually consistent than the old theory of estates which took into account only so-called "vested" interests.
 
 Any interest which takes away a part of the sum total of rights, powers, privileges and immunities which go to make up a fee simple absolute is an existing interest.
 

 Ibid.
 

 , § 4.1.
 

 Moreover, the word 'vested' is meaningless unless more precisely defined.
 
 It is often used in at least four senses: An interest in land has become possessory or is vested in possession; it is an estate, vested in interest, rather than the possibility of becoming one; it is transmissible on death; it has acquired the degree of certainty which under the Rule against Perpetuities an interest must acquire within lives in being and 21 years or fail. Leach and Logan, Cases on Future Interests and Estate Planning (1961), pp. 253, 254.
 

 In summary, the precedent and statutory history of the law of this state place an independent value and significance on future interests, whether "vested" or not. A future interest, such as the executory one owned by appellants, is property which now exists. The privilege of
 possession and enjoyment is future and not present, but it is an existing interest. Furthermore, Miss. Const. Sec. 17 was intended to protect all interests in property, and to prevent the state from taking the same without due compensation to the owners.
 

 Id.
 
 at 461-62 (emphasis added).
 

 ¶43. The Court went on,
 

 When a contingent remainder is limited to an existing ascertained person there is no question but that the courts will recognize the interest as having present existence. The wide acceptance of that fact makes it clear that the interest is "property" in the usual sense of the word. Whether a given future interest is of a sufficiently substantial character to be given the protection of a particular constitutional guaranty would seem properly to depend upon factors other than the classification as vested or contingent.
 

 Id.
 
 at 462.
 

 ¶44. The Court applied general property principles to the constitutional issue before it in
 
 Hemphill
 
 . Here, the same general property principles are applicable. Under
 
 Hemphill
 
 , the classification of whether Claire and Jane's future interest is "vested or not" is not dispositive.
 
 Id.
 
 Claire and Jane enjoy a contingent remainder "interest as having present existence."
 
 See
 

 id.
 
 at 461.
 

 ¶45. Ultimately, under the guide of
 
 Hemphill
 
 and
 
 Baumgardner
 
 , and in light of the Court's liberal standing requirements, I would affirm the judgment of the Court of Appeals. Jane and Claire, as contingent remainder interest holders, have standing to request an accounting, because they have a colorable interest in the subject matter of whether the estate and the trust were administered faithfully. I would affirm the Court of Appeals and would allow the matter to be remanded to the chancery court for further proceedings.
 

 KITCHENS, P.J., AND CHAMBERLIN, J., JOIN THIS OPINION.